TARRANT COUNTY HOSPITAL DIS-
TRICT d/b/a JPS Institute for Health
Career Development, Appellant,

v.

Belinda HENRY, Appellee.

In re Tarrant County Hospital District
d/b/a JPS Institute for Health Career
Development, Relator.

No. 2–00–101–CV.

Court of Appeals of Texas,
Fort Worth.

July 26, 2001.

436

McDonald Sanders, P.C., Rory Divin, George C. Haratsis, Fort Worth, Tim Curry, Crim. Dist. Atty., Charles Mallin, Chief, Appellate Div., Kristi LaRoe, John M. Oliver and Alice L. Bishop, Asst. Dist. Attys. of Tarrant County, for Appellant/Relator.

Bourland, Kirkman, Seidler & Evans and Jamshyd (Jim) M. Zadeh, Fort Worth, for Appellee/Real Party In Interest.

Panel A: CAYCE, C.J., DAUPHINOT and GARDNER, JJ.

## OPINION ON REHEARING

DAUPHINOT, Justice.

### I. INTRODUCTION

We withdraw our opinion and judgment of March 30, 2001 and substitute the following in their place. We deny Belinda Henry's motion for rehearing.

In this interlocutory appeal and mandamus action, Tarrant County Hospital District, d/b/a JPS Institute for Health Career Development (the Hospital District) appeals from the trial court's order denying its plea to the jurisdiction based on sovereign immunity and seeks mandamus relief from the trial court's sanctions order. Because we hold that the Hospital District is immune from suit on some, but not all, of Henry's claims, we affirm in part the trial court's order denying the Hospital District's plea to the jurisdiction and reverse

and render in part. Further, because we hold that the trial court abused its discretion with regard to part of its February 23, 2000 sanctions order, we conditionally grant the writ of mandamus in part.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Belinda Henry and Byron Graves worked for the Hospital District's Institute for Health Career Development (the Institute). The parties are in dispute about the nature of Henry and Graves's relationship. The Hospital District contends that Henry and Graves had a consensual sexual relationship, but Henry contends that Graves's sexual advances were unwelcome.

Graves testified that on the evening of July 31, 1997, Henry called and asked him to meet her at the Institute and that, when he arrived, Henry invited him into her office, where the two had consensual sex. Conversely, Henry contends that she went to the Institute that evening only to talk to Graves and to get her day planner; that, once inside, she could not leave the building because Graves locked the doors; and that Graves sexually assaulted her. On September 30, 1997, the Hospital District terminated Graves's employment and decided not to renew Henry's teaching contract.

Henry sued the Hospital District for assault and battery, intentional infliction of emotional distress, negligence, violations of the Texas Commission on Human Rights Act (TCHRA), breach of contract, and exemplary damages. On December 15, 1999, Henry moved for sanctions, alleging that the Hospital District had altered and withheld evidence during discovery. The Hospital District filed its special exceptions and plea to the jurisdiction asserting sovereign immunity on February 2, 2000. On February 23, 2000, the trial court granted Henry's motion for sanctions and struck the Hospital District's pleadings.

On March 1, 2000, the trial court conducted a hearing on the Hospital District's special exceptions and plea to the jurisdiction and denied the plea. On March 15, 2000, the Hospital District filed a motion to reconsider, which the trial court denied without a hearing on March 23. The Hospital District filed an interlocutory appeal from the trial court's denial of its plea to the jurisdiction [1] and petitioned for mandamus relief from the trial court's imposition of death-penalty sanctions. This court stayed the underlying proceedings and consolidated the interlocutory appeal and the mandamus action into this docket number.

## III. APPEAL

In five points on appeal, the Hospital District contends its immunity from suit has not been waived because Henry has not pleaded a claim under the Texas Tort Claims Act (TTCA) for her intentional tort and negligence claims, the Hospital District is not an employer under the TCHRA, the Hospital District is immune from suit for exemplary damages under the TTCA and TCHRA, and, as a governmental entity, it is immune from suit on Henry's breach of contract claims.

### A. Standard of Review.

We review a trial court's ruling on a plea to the jurisdiction under a de novo standard of review.[2] In determining

---

1. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (Vernon Supp.2001) (providing that person may appeal from interlocutory order that grants or denies plea to the jurisdiction by governmental unit).

2. *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998), *cert. denied,* 526 U.S. 1144, 119 S.Ct. 2018, 143 L.Ed.2d 1030 (1999).

whether jurisdiction exists, we look to the allegations in the pleadings, accept them as true, and construe them in favor of the pleader.[3]

 The Texas Supreme Court has long recognized that sovereign immunity protects the State of Texas, its agencies, and its officials from lawsuits for damages, absent legislative consent to sue.[4] The doctrine of sovereign immunity embraces two distinct principles: immunity from suit and immunity from liability.[5] Immunity from suit bars a suit against the State unless the State has expressly consented to the suit.[6] "In other words, although the claim asserted may be one on which the State acknowledges liability, this rule precludes a remedy until the Legislature consents to suit." [7] Legislative consent to suit must be by clear and unambiguous language, in either a statute or by other express legislative permission.[8] Absent the State's consent to suit, a trial court lacks subject matter jurisdiction over a suit against a governmental entity.[9] Because immunity from suit defeats a trial court's subject matter jurisdiction, it is properly asserted in a plea to the jurisdiction.[10]

 In contrast, immunity from liability protects the State from judgments even if the Legislature has expressly consented to suit.[11] In other words, even if the Legislature has authorized suit against the State, the question remains whether the claim is one for which the State acknowledges liability.[12] The State neither creates nor admits liability by granting permission to sue.[13] Immunity from liability is an affirmative defense and does not affect a court's jurisdiction to hear a case.[14]

### B. Texas Tort Claims Act

#### 1. Intentional Torts.

 In its first issue, the Hospital District contends its immunity from suit for Henry's assault and battery and intentional infliction of emotional distress claims has not been waived under the TTCA. In response, Henry concedes that these causes of action do not survive the TTCA's intentional tort exception [15] and agrees to remove them from her petition. Because Henry cannot sue the Hospital District under the TTCA for intentional torts, the

---

3. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993); *City of Saginaw v. Carter,* 996 S.W.2d 1, 2–3 (Tex.App.— Fort Worth 1999, pet. dism'd w.o.j.).

4. *Fed. Sign v. Tex. So. Univ.*, 951 S.W.2d 401, 405 (Tex.1997).

5. *Id.*

6. *Id.*

7. *Id.; see also Univ. of Tex. Med. Branch v. York,* 871 S.W.2d 175, 177 (Tex.1994) (noting that waiver of governmental immunity is a matter addressed to Legislature).

8. *Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex.1999); *Fed. Sign,* 951 S.W.2d at 405.

9. *Jones,* 8 S.W.3d at 638.

10. *Id.* at 638–39.

11. *Id.* at 638.

12. *Fed. Sign,* 951 S.W.2d at 405.

13. *Id.; see also* TEX. CIV. PRAC. & REM.CODE ANN. § 107.002(b) (Vernon 1997) ("A resolution granting permission to sue does not waive to any extent immunity from liability."); *State v. Isbell,* 127 Tex. 399, 94 S.W.2d 423, 425 (1936) ("[T]he state does not assume and consent to become liable in damages for the torts of its officers, agents, and servants simply by virtue of a statute permitting suit against it.").

14. *Jones,* 8 S.W.3d at 638.

15. TEX. CIV. PRAC. & REM.CODE ANN. § 101.057(2) (Vernon 1997) ("This chapter does not apply to a claim ... arising out of assault, battery, ... or any other intentional tort. ...").

trial court erred in denying the Hospital District's plea to the jurisdiction on these claims. We sustain the Hospital District's first issue.

### 2. Negligence Claims.

In its second issue, the Hospital District contends its immunity from suit on Henry's negligence claims has not been waived because: (1) the claims are actually claims alleging an intentional tort (rape) and are therefore barred by the TTCA's intentional tort exception; and (2) in the alternative, even if Henry's claims are not for intentional torts, they are still barred because her alleged injuries were not caused by a condition or use of tangible property.

### a. Intentional Tort Exception.

The TTCA "does not apply to a claim . . . arising out of assault, battery, . . . or any other intentional tort. . . ."[16] This provision is an exception to the limited waiver of immunity brought about by the TTCA. Thus, even if immunity is waived under section 101.021 of the TTCA, a claim is still prohibited if it falls within the section 101.057(2) exception.[17]

■ The Texas Supreme Court has refused to apply the "arising out of" language in this exception "so broadly as to except from the waiver of immunity any claim, irrespective of its nature, for injuries resulting from an intentional tort. . . ."[18] Instead, where a plaintiff alleges that both intentional and negligent acts caused her injuries, the supreme court has held the intentional tort exception does not preclude a cause of action under the TTCA based on the alleged negligence.[19] In *Delaney*, the court held that the claim of a raped student against the university for negligent failure to repair a dormitory lock did not "arise out of" the rape and fall within the intentional tort exception of section 101.057(2) because the student's negligence claim was distinct from her intentional tort claim.[20] A plaintiff cannot, however, circumvent the intentional tort exception simply by pleading negligence. The plaintiff must allege facts that, if true, would support a negligence claim apart from a claim for an intentional tort.[21]

■ Henry complains in part that Graves, a Hospital District employee, misused Hospital District property by disabling the alarm system at the Institute and using a key to lock the Institute doors so that she could not escape his attack. These are intentional tort claims that fall within the intentional tort exception to the TTCA's waiver of immunity from suit.[22]

---

**16.** *Id.*

**17.** *Delaney v. Univ. of Houston,* 835 S.W.2d 56, 58 (Tex.1992).

**18.** *Id.* at 59–60.

**19.** *Id.*

**20.** *Id.*

**21.** *Id.* (holding that student's negligence claim did not circumvent intentional tort exception to TTCA's waiver of immunity because, if student had alleged intruder had entered her room through door and injured her negligently, university would not have been able to invoke section 101.057(2) to avoid liability); *see also Hendrix v. Bexar County Hosp. Dist.,*

31 S.W.3d 661, 662 n. 1 (Tex.App.—San Antonio 2000, pet. denied) (op. on reh'g) (noting that "when the focus of a claim is on the governmental entity's negligent conduct, rather than the intentional conduct of its employee, the claim will not be treated as arising from the intentional tort").

**22.** *See Delaney,* 835 S.W.2d at 59 (holding that TTCA's intentional tort exception to waiver of immunity from suit applies to complaints based on intentional acts of governmental employees); *see also Scott v. Prairie View A & M Univ.,* 7 S.W.3d 717, 719 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) (holding government has not waived immunity from suit for governmental employees' intentional acts); *Petta v. Rivera,* 985 S.W.2d

Because immunity from suit has not been waived as to these claims, the trial court improperly denied the Hospital District's plea to the jurisdiction as to them.

■■■■ Henry also contends, however, that her injuries were caused partly by the Hospital District's negligent failure to properly monitor its alarm system, its negligence in allowing Graves to have the ability to disarm the alarm system, and its negligence in allowing the doors at the Institute to be locked with a key. These claims do not circumvent the intentional tort exception to the waiver of sovereign immunity under the TTCA because, if Graves had injured Henry by negligently locking her in the building or by negligently disarming the alarm system, the Hospital District could not avoid liability based on section 101.057(2).[23] However, this is not the end of our inquiry. Even if a claim is not barred by the intentional tort exception of section 101.057, immunity from suit is not waived unless the plaintiff has alleged facts that state a claim within the TTCA's immunity waiver—in this case, facts that state a claim under section 101.021(2).

### b. Condition or use of tangible property.

■■■ In determining whether immunity has been waived under the TTCA, we are mindful that while the waiver is to be liberally construed, this liberal construction must be balanced with the legislative intent of waiving immunity only to a limited degree.[24] The TTCA provides that sovereign immunity from suit and liability is waived for claims of "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law."[25] We must therefore determine whether Henry has pleaded sufficient facts to state a cause of action under the TTCA's waiver of immunity.[26]

Henry's factual allegations in her pleadings are very brief. She alleges that, while she and Graves both worked for the Hospital District, she was subjected to verbal and sexual harassment from Graves, including two occasions of sexual assault; the Hospital District failed to properly investigate Graves's background, which included an assault of his wife; failed to properly monitor Graves after a complaint of sexual harassment; and "failed to prevent the harassment and assault of a [Hospital District] employee," presumably Henry. Henry also alleges that the Hospital

199, 205–06 (Tex.App.—Corpus Christi 1998) (same), *rev'd on other grounds sub nom., Tex. Dep't of Pub. Safety v. Petta,* 44 S.W.3d 575 (2001).

23. The *Delaney* court did not reach the issue of whether the negligence claim of the plaintiff in that case fell within the TTCA's waiver of immunity, and we decline to follow any cases that have interpreted *Delaney* to so hold. *See, e.g., Downey v. Denton County,* 119 F.3d 381, 387–88 (5th Cir.1997). We also decline to follow *City of Waco v. Hester,* 805 S.W.2d 807, 810–12 (Tex.App.—Waco 1990, writ denied), a pre-*Delaney* case that only considered whether a sexually assaulted inmate's claim for failure to provide police protection "arose out of" an intentional tort for purposes of the section 101.057 exception and not whether the inmate alleged sufficient facts to state a negligence claim based on a condition or use of property under section 101.021(2).

24. *Tex. Dep't of MHMR v. Lee,* 38 S.W.3d 862, 866 (Tex.App.—Fort Worth 2001, pet. filed); *see also Dallas County MHMR v. Bossley,* 968 S.W.2d 339, 343 (Tex.) (stating that TTCA's basic purpose was to waive immunity only to a limited degree), *cert. denied,* 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998).

25. Tex. Civ. Prac. & Rem.Code Ann. §§ 101.021(2), 101.025(a) (Vernon 1997).

26. *See Jones,* 8 S.W.3d at 638.

District was negligent in locking the doors on Hospital District property during her assault and in allowing Graves to have the ability to disarm the alarm system. She does not allege that Graves actually disarmed the alarm system or locked the doors with a key so she could not leave. In the interest of judicial economy, however, we will assume that her pleadings contain these factual allegations because they form the basis of the parties' contentions on appeal and have some evidentiary support in the record, and because even these facts, if taken as true and in the light most favorable to Henry, do not state a claim under section 101.021(2).[27]

■ For immunity to be waived, the alleged personal injury must have been proximately caused by a condition or use of tangible personal or real property.[28] Henry complains both of a use of property—the locked doors, a key to the doors, and the disarmed alarm system—and of a condition of property—doors that could be locked with a key so that she could not unlock them from the inside without a key. But causation requires more than mere *involvement* of property.[29] "Requiring only that a condition or use of property be involved would conflict with the Act's basic purpose of waiving immunity only to a limited degree."[30] Property does not cause injury if it does no more than furnish the condition that makes the injury possible.[31]

■ In this case, the fact that the doors could be locked with a key did not cause the assault on Henry. The manner in which the doors could be locked was too attenuated from Henry's injuries to have caused them. While the locked doors may have prevented Henry from leaving the building without her key,[32] thereby furnishing the condition that made her assault possible, they did not proximately cause her injuries.[33] Further, while Henry

27. *See Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 555 (Tex.2000) ("[A] court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised. The court should, of course, confine itself to the evidence relevant to the jurisdictional issue.").

28. *Bossley,* 968 S.W.2d at 342–43 (paraphrasing section 101.021(2)).

29. *See Lee,* 38 S.W.3d at 867 (holding there must be close causal relationship between condition or use of property and resulting injury).

30. *Bossley,* 968 S.W.2d at 343 (citing *Lowe v. Tex. Tech Univ.,* 540 S.W.2d 297, 303 (Tex. 1976) (Greenhill, C.J., concurring)).

31. *Id.* (citing *Union Pump Co. v. Allbritton,* 898 S.W.2d 773, 776 (Tex.1995)); *Lee,* 38 S.W.3d at 867.

32. Henry admitted at her deposition that she had a key in her purse in her office on the evening of the assault, but said she did not have her purse or the key with her when she tried to leave.

33. *See Hendrix,* 31 S.W.3d at 663 (holding that county hospital employee's use of examination room, examination table, patient gown, and public address system did not cause assault, but merely furnished some conditions that made assault possible); *Wimberley v. Sloan,* 963 S.W.2d 556, 558 (Tex.App.— Eastland 1998, no pet.) (holding that county employee's assault of plaintiff directed to sit in office in government building was not actionable under TTCA due to insufficient nexus between government property and assault); *Holder v. Mellon Mortg. Co.,* 954 S.W.2d 786, 804, 807 (Tex.App.—Houston [14th Dist.] 1997) (holding plaintiff sexually assaulted by police officer in city vehicle failed to state claim under TTCA because officer's use of vehicle was not direct cause of plaintiff's injury and, instead, plaintiff was injured by officer's intentional assault), *rev'd on other grounds,* 5 S.W.3d 654 (Tex.1999).

states in her brief that the Hospital District locked the doors, she testified at her deposition that Graves locked them. As we have previously held, the Hospital District has not waived immunity from suit for Graves's intentional acts. Finally, the Hospital District's alleged negligence in giving Graves a key to the doors is also too attenuated from the assault to have caused it.[34]

In addition, Henry does not explain how the lack of an alarm caused the assault or even made the assault possible. She testified at her deposition that, on the evening of the alleged assault, she called Graves and asked him to meet her in the Institute parking lot, Graves's car was in the parking lot when she arrived, and she voluntarily went into the building and talked to him. Henry infers in her appellate brief that Graves snuck into the building and trapped her in her office, but there is no pleading or evidence to support this inference. It was only after their conversation that Graves allegedly prevented Henry from leaving. Henry does not allege that she would have been able to call for help or escape if the alarm system had been on.

The real substance of Henry's complaint is that the sexual assault was caused by

the Hospital District's failure to prevent Graves, a known sexual predator, from locking her inside the Institute and then assaulting and harassing her. This type of conduct does not fall within the TTCA's limited waiver of immunity.[35]

Several of the cases on which Henry relies to support her contention that she has alleged facts that state a claim under section 101.021(2) are distinguishable from her situation. For instance, the supreme court has limited *Salcedo v. El Paso Hospital District*[36] to its facts—misuse of an electrocardiograph.[37] We decline to follow *Vela v. City of McAllen*,[38] in which the court held that an epileptic plaintiff arrested for DWI pleaded a TTCA claim based on use of property by alleging that the booking officer used the booking room negligently because the officer placed a stool where the plaintiff fell and hit it during an epileptic seizure. Henry also cites *Alvarado v. City of Brownsville*, which has been reversed and rendered by the supreme court.[39] Henry does not explain why this case supports her position, so we will not consider it.

Because Henry has failed to allege sufficient facts to state a claim under the TTCA, the trial court erred in denying the

---

**34.** See *Scott*, 7 S.W.3d at 720 (holding that school's alleged negligence in allowing school counselor to use dormitory room to sexually assault one student and money to rent hotel room to assault another was too attenuated from assaults to have caused them).

**35.** See *Lee*, 38 S.W.3d at 868 (holding TTCA's immunity waiver did not encompass true substance of state hospital patient's complaint, which was that hospital staff failed to protect her from assailant); *Scott*, 7 S.W.3d at 720 (holding plaintiff's allegation that school negligently allowed her assailant to use school dormitory room to assault her did not state claim under TTCA); see also *Bossley*, 968 S.W.2d at 343 (holding real substance of plaintiff's complaint was that patient's death was caused by hospital staff's failure to re-

strain him once they learned he was suicidal, not by condition or use of property); *Amador v. San Antonio State Hosp.*, 993 S.W.2d 253, 256 (Tex.App.—San Antonio 1999, pet. denied) (holding plaintiff's actual complaint was that hospital negligently failed to properly evaluate and restrain patient, which did not implicate TTCA's immunity waiver).

**36.** 659 S.W.2d 30 (Tex.1983).

**37.** *Bossley*, 968 S.W.2d at 342.

**38.** 894 S.W.2d 836, 840 (Tex.App.—Corpus Christi 1995, no writ).

**39.** 865 S.W.2d 148 (Tex.App.—Corpus Christi 1993), *rev'd*, 897 S.W.2d 750 (Tex.1995).

Hospital District's plea to the jurisdiction as to Henry's TTCA negligence claims. We sustain the Hospital District's second issue.

### C. Texas Commission on Human Rights Act.

In its third issue, the Hospital District contends the trial court erred in denying its plea to the jurisdiction as to Henry's claim under the Texas Commission on Human Rights Act (TCHRA).

Henry alleges the Hospital District violated the TCHRA, which prohibits employers from discriminating against employees on various grounds, including sex.[40] The Hospital District contends its sovereign immunity is not waived under the TCHRA because it is not an "employer" as that term is defined in the TCHRA. We hold the Hospital District is an employer under the TCHRA.

#### 1. TCHRA's Definition of Employer.

The TCHRA defines an employer as:

(A) a person who is engaged in an industry affecting commerce and who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year;

. . . .

(C) an individual elected to public office in this state or a political subdivision of this state; or

(D) a county, municipality, state agency, or state instrumentality, regardless of the number of individuals employed.[41]

#### 2. Hospital District is a State Instrumentality.

The Hospital District contends that, as a special-purpose district, it is not included in TCHRA's definition of employer. More specifically, the Hospital District asserts that it is not an employer under section 21.002(8)(D) because it is not a county, municipality, state agency, or state instrumentality. We do not disagree with the Hospital District's assertion that it is neither a county nor a municipality, and the Hospital District does not fall within the TCHRA's definition of "state agency."[42] Nonetheless, the mere fact that the term "hospital district" or "special-purpose district" is not specifically enumerated under section 21.002(8)(D) does not mean a hospital district is not a state instrumentality under that section.

In construing a statute, our objective is to determine and give effect to the Legislature's intent.[43] We first look at the statute's plain and common meaning and presume that the Legislature intended the plain meaning of its words.[44] Black's Law Dictionary defines "instrumentality" as "[a] means or agency through which a function of another entity is accomplished, such as a branch of a governing body."[45] Accordingly, a state instrumentality is a branch of the State. The Hospital District

40. TEX. LAB.CODE ANN. § 21.051 (Vernon 1996).

41. *Id.* § 21.002(8) (Vernon Supp.2001).

42. Under the TCHRA, "state agencies" are executive and judicial agencies having statewide jurisdiction, the supreme court, the court of criminal appeals, a court of appeals, the State Bar of Texas, and institutions of higher education. TEX. LAB.CODE ANN. § 21.002(14) (Vernon Supp.2001).

43. *Albertson's, Inc. v. Sinclair,* 984 S.W.2d 958, 960 (Tex.1999).

44. *Nat'l Liab. & Fire Ins. Co. v. Allen,* 15 S.W.3d 525, 527 (Tex.2000); *Fleming Foods v. Rylander,* 6 S.W.3d 278, 284 (Tex.1999); *see also* TEX. GOV'T CODE ANN. § 311.011 (Vernon 1998).

45. BLACK'S LAW DICTIONARY 802 (7th ed.1999).

is a branch of the State, having been created by authority of the Texas Legislature and our state constitution.[46] Indeed, the doctrine of sovereign immunity is based on agency principles and the fact that governmental entities are derived from the state's constitution and laws.[47] Thus, if the Hospital District were not a branch of the State, it could not claim sovereign immunity from any type of suit. Based on the plain meaning of "state instrumentality," we believe the Legislature intended the term to include a hospital district; therefore, a hospital district is an employer under section 21.002(8)(D).

**46.** Tex. Health & Safety Code Ann. §§ 281.001(2), 281.002 (Vernon 1992); Tex. Const. art. IX, § 4 (amended 1999).

**47.** *City of Lancaster v. Chambers*, 883 S.W.2d 650, 658 (Tex.1994) (holding that municipality's immunity from suit derived from its status as political subdivision of state); *Tex. Workers' Comp. Comm'n v. City of Eagle Pass*, 14 S.W.3d 801, 803–04 (Tex.App.—Austin 2000, pet. denied) ("A political subdivision's immunity is a privilege afforded it based on its existence as a subdivision of the State...."); *Dillard v. Austin Indep. Sch. Dist.*, 806 S.W.2d 589, 594 (Tex.App.—Austin 1991, writ denied) (op. on reh'g) (noting that, under TTCA, immunity extends to all agencies, political subdivisions, and other institutions that are derived from state constitution and laws); *Smith v. Harris County-Houston Ship Channel Nav. Dist.*, 330 S.W.2d 672, 674 (Tex.Civ.App.—Fort Worth 1959, no writ) (noting well-settled law that public districts, such as navigation districts, irrigation districts, and levee improvement districts, created by constitutional and statutory authority are political subdivisions of state).

**48.** *See* Op. Tex. Att'y Gen. No. LO–97–068 (1997); Op. Tex. Att'y Gen. No. LO–93–49 (1993); Op. Tex. Att'y Gen. No. DM–131 (1992); Op. Tex. Att'y Gen. No. DM–107 (1992); Op. Tex. Att'y Gen. No. JM–257 (1984).

**49.** *Salcedo*, 659 S.W.2d at 31 ("The El Paso Hospital District is a political subdivision of the State of Texas."); *Weeks v. Harris County*

The Hospital District relies on several opinions issued by the Texas Attorney General, in which hospital districts are simply referred to as special-purpose districts.[48] However, none of these opinions addresses whether a hospital district is a special-purpose district to the exclusion of being a state agency, state instrumentality, or political subdivision. Moreover, several courts, including this court,[49] have held that a hospital district is a political subdivision of the State for purposes of the TTCA, even though the term "hospital district" is not included among the State political subdivisions listed in the TTCA.[50]

*Hosp. Dist.*, 785 S.W.2d 169, 170 (Tex.App.—Houston [14th Dist.] 1990, writ denied) ("Harris County Hospital District is a political subdivision of the State of Texas...."); *Armendarez v. Tarrant County Hosp. Dist.*, 781 S.W.2d 301, 307 (Tex.App.—Fort Worth 1989, writ denied) (noting that Tarrant County Hospital District is a state political subdivision).

The Hospital District concedes it is a political subdivision of the State for purposes of the TTCA, but contends it is not a political subdivision under the TCHRA. *See* Tex. Lab. Code Ann. § 21.002(8)(C) (Vernon Supp.2001) (including "political subdivision of this state" within employer definition). The TCHRA does not define political subdivision *of the state*, but it does define "political subdivision" to mean a county or municipality. *Id.* § 21.002(12); *see also* § 21.002 revisor's note § 3 (Vernon 1992) ("The source law defines a 'political subdivision' as a 'county or municipality.' ... In other codes, the term 'political subdivision' generally includes special districts, authorities, and other governmental entities."). In light of our disposition of this point, we need not consider whether the Hospital District is a political subdivision under the TCHRA.

**50.** The State political subdivisions listed in the TTCA definition of governmental unit include a public health district, Tex. Civ. Prac. & Rem.Code Ann. § 101.001(3)(B) (Vernon Supp. 2001), but a hospital district is not a public health district. A public health district is established by two or more counties or municipalities or a combination thereof, while a hospital district is a countywide hospital dis-

Accordingly, the mere fact that a hospital district is not specifically listed as a state instrumentality in section 21.002(8)(D) is not evidence of legislative intent to exclude hospital districts from the meaning of that term.

 The Hospital District relies in part on a 1989 senate bill, which would have included a special-purpose district as a "person" under the TCHRA's definition of employer:

(A) a person, including a school district or a special-purpose district or authority of this state, engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year and any agent of that person; or

(B) a county or municipality or any state agency or instrumentality, including public institutions of higher education, regardless of the number of individuals employed.[51]

However, the 1989 amendments to the TCHRA eventually adopted defined "employer" as:

(A) a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year and any agent of that person; or

(B) a county or municipality or any state agency or instrumentality, including public institutions of education, re-

gardless of the number of individuals employed.[52]

The deletion of a provision in a pending bill may, as the Hospital District points out, indicate legislative intent to reject the proposal.[53] Nonetheless, the deletion in this case does not evidence legislative intent to exclude the Hospital District from the TCHRA's definition of employer. Comparing the proposed bill with the final legislation, we cannot tell (1) whether the Legislature intended to exclude a special-purpose district from the definition of employer altogether, or (2) whether it simply considered the inclusion of a special-purpose district as a "person" redundant because special-purpose districts are state instrumentalities and therefore already employers under the TCHRA. Further, where, as here, the meaning of a statute is unambiguous, we must ascertain the Legislature's intent from the language it used in the statute and not look to extraneous matters for an intent the statute does not state.[54]

We are also unpersuaded by the Hospital District's argument that state instrumentalities are only public institutions of education. The current definition of "employer" has dropped the phrase "including a public institution of education" after "state instrumentality" and reads simply:

(D) a county, municipality, state agency, or state instrumentality, regardless of the number of individuals employed.[55]

Institutions of higher education are now included within the definition of "state

trict created by a county with at least 190,000 inhabitants. *Compare* Tex. Health & Safety Code Ann. § 121.041 (Vernon 1992) *with id.* §§ 281.001(2), 281.002.

**51.** Tex. S.B. 479, 71st Leg., R.S. (1989).

**52.** Act of May 29, 1989, 71st Leg., R.S., ch. 1186, § 3, 1989 Tex. Gen. Laws 4824, 4825.

**53.** *Smith v. Baldwin*, 611 S.W.2d 611, 616–17 (Tex.1980); *Berry v. State Farm Mut. Auto. Ins. Co.*, 9 S.W.3d 884, 891 (Tex.App.—Austin 2000, no pet.).

**54.** *Nat'l Liab. & Fire Ins. Co.*, 15 S.W.3d at 527.

**55.** Tex. Lab.Code Ann. § 21.002(8)(D).

agency." [56]

"The rule requiring a waiver of governmental immunity to be clear and unambiguous cannot be applied so rigidly that the almost certain intent of the Legislature is disregarded." [57] Here, the plain meaning of "state instrumentality" evidences almost certain legislative intent to include hospital districts within the scope of that term as used in section 21.002(8)(D). Thus, we conclude the Hospital District is a state instrumentality, and therefore an employer, under the TCHRA.

In light of our holding that the Hospital District is a state instrumentality under the TCHRA, we need not consider its argument that it is not a "person" under section 21.008(A). We overrule the Hospital District's third issue.

### D. Breach of Contract Claim.

 Although a governmental entity waives its immunity from liability when it contracts with a private citizen, the act of contracting does not waive the entity's immunity from suit. [58] A private citizen must have legislative consent to sue the State on a breach of contract claim. [59]

 In its fourth issue, the Hospital District asserts the trial court erred in denying its plea to the jurisdiction on Henry's breach of contract claim because the Legislature has not consented to the suit by statute or any other means. Henry contends, however, that the Hospital District's immunity from suit has been waived in the health and safety code. Regardless of whether this basis for jurisdiction was raised in the trial court, we address it on appeal because subject matter jurisdiction is essential to the authority of a court to decide a case, is never presumed, and cannot be waived. [60]

 The health and safety code provides that the board of managers of a hospital district manages, controls, and administers the district's hospital system and may sue and be sued. [61] It is well settled that this type of statutory provision is a consent to suit, resulting in waiver of immunity from suit. [62]

**56.** *Id.* § 21.002(14)(C).

**57.** *City of LaPorte v. Barfield,* 898 S.W.2d 288, 292 (Tex.1995).

**58.** *Fed. Sign,* 951 S.W.2d at 408.

**59.** *Id.*

**60.** *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 443–44 (Tex.1993); *see also Mo. Pac. R. Co. v. Brownsville Nav. Dist.,* 453 S.W.2d 812, 813–14 (Tex.1970) (addressing similar "sue and be sued" argument, despite its being raised for first time at oral argument in supreme court).

**61.** Tex. Health & Safety Code Ann. §§ 281.001, 281.047, 281.056(a) (Vernon 1992).

**62.** *Mo. Pac.,* 453 S.W.2d at 813–14 (construing statutory provision that "[a]ll navigation districts established under this Act may, by and through the navigation and canal commissioners, sue and be sued"); *see also Fed. Sign,* 951 S.W.2d at 408 (noting *Missouri Pacific* holding that "sue or be sued" provision was legislative grant of consent to suit); *Alamo Comm. Coll. Dist. v. Obayashi Corp.,* 980 S.W.2d 745, 748 (Tex.App.—San Antonio 1998, pet. denied) (holding education code provision that school district trustees may sue and be sued was unambiguous waiver of immunity from suit for all independent school districts and junior colleges), *abrogated on other grounds by Gen. Servs. Comm'n v. Little-Tex Insulation Co.,* 39 S.W.3d 591 (Tex.2001); *Loyd v. ECO Res., Inc.,* 956 S.W.2d 110, 122 (Tex.App.—Houston [14th Dist.] 1997, no pet.) (holding water code provision that water district could sue and be sued waived immunity from suit); *Knowles v. City of Granbury,* 953 S.W.2d 19, 23 (Tex.App.—Fort Worth 1997, pet. denied) (holding local government code provision that home-rule municipality may plead and be impleaded in any court was a waiver of municipality's immunity from suit).

In *Townsend v. Memorial Medical Center*, the Corpus Christi Court of Appeals held that the statutory provision at issue did not waive a hospital district's immunity from suit.[63] *Townsend's* holding, however, was based solely on *Childs v. Greenville Hospital Authority*,[64] which, in turn relied only on cases decided before the Texas Supreme Court's decision in *Missouri Pacific*.[65] In addition, two of the cases cited in *Childs* (*Bennett* and *Bexar Metropolitan Water District*) do not even mention a "sue and be sued" statutory provision, and a third (*Karling*) mentions but does not discuss it. Without analysis, *Jackson v. City of Galveston*[66] also followed *Townsend* and *Childs*. We believe *City of Galveston* is contrary to the supreme court's decision in *Missouri Pacific* and its progeny. Moreover, the Corpus Christi court has more recently held that a statute permitting an agency to sue or be sued is a "clear and unambiguous" legislative consent to suit.[67] We decline to follow *Townsend* here.

We are also aware of the Austin Court of Appeals' holding that a statute providing that a high-speed rail authority board "may sue and be sued on behalf of the authority" only waived the board's immunity from suit and not the authority's immunity.[68] This distinction is inconsistent with the supreme court's construction of an almost identical provision in *Missouri Pacific*.[69] We believe such an argument would be more properly framed as a challenge to capacity rather than a challenge to subject matter jurisdiction.[70] Unlike subject matter jurisdiction, lack of capacity to sue or be sued must be challenged via verified plea in the trial court, or it is waived.[71]

Because the Legislature has waived the Hospital District's immunity and consented to suit in the health and safety code, the trial court did not err by denying the Hospital District's plea to the jurisdiction on Henry's breach of contract claim. Henry was not required to affirmatively plead consent to suit because the health and safety code is a general statute

---

**63.** 529 S.W.2d 264, 267 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.) (construing predecessor to section 281.056(a), which also provided that board of managers of county hospital district had power and authority to sue and be sued).

**64.** 479 S.W.2d 399 (Tex.Civ.App.—Texarkana 1972, writ ref'd n.r.e.).

**65.** *Id.* at 401 (citing *Bennett v. Brown County Water Imp. Dist.*, 153 Tex. 599, 272 S.W.2d 498 (1954); *Jones v. Tex. Gulf Sulphur Co.*, 397 S.W.2d 304 (Tex.Civ.App.—Houston 1965, writ ref'd n.r.e.); *Karling v. Lower Colo. River Auth.*, 303 S.W.2d 495 (Tex.Civ.App.—Austin 1957, writ ref'd n.r.e.); *Bexar Metro. Water Dist. v. Kuntscher*, 274 S.W.2d 121 (Tex.Civ.App.—San Antonio 1954, no writ)).

**66.** 837 S.W.2d 868, 871 (Tex.App.—Houston [14th Dist.] 1992, writ denied).

**67.** *Engelman Irrigation Dist. v. Shields Bros., Inc.*, 960 S.W.2d 343, 348 (Tex.App.—Corpus Christi 1997), *pet. denied per curiam*, 989 S.W.2d 360 (Tex.1998).

**68.** *Southwest Airlines Co. v. Tex. High–Speed Rail Auth.*, 867 S.W.2d 154, 157 (Tex.App.—Austin 1993, writ denied) (op. on reh'g).

**69.** 453 S.W.2d at 813–14 (holding water navigation district's immunity was waived where statute provided for suit by and through navigation and canal commissioners); *see also Alamo Comm. Coll. Dist.*, 980 S.W.2d at 748 (holding immunity of school districts and junior colleges was waived by provision that district trustees could sue and be sued in name of district).

**70.** *See* Tex.R. Civ. P. 93.1.

**71.** *Pledger v. Schoellkopf*, 762 S.W.2d 145, 146 (Tex.1988); *El T. Mexican Rest., Inc. v. Bacon*, 921 S.W.2d 247, 250 (Tex.App.—Houston [1st Dist.] 1995, writ denied).

authorizing suits against the Hospital District.[72] We overrule the Hospital District's fourth issue.

Henry contends that, if the Legislature waived the Hospital District's consent to suit in the health and safety code, the trial court has jurisdiction over all her claims. To the extent Henry would interpret the health and safety code provision as waiving the Hospital District's immunity from suit under the TTCA and the TCHRA, we disagree. First, the *Missouri Pacific* case on which Henry relies only construed the "sue and be sued" provision as a consent to suit on a breach of contract claim.[73] Henry has not directed us to any cases in which a court has held that a general statute authorizing a governmental entity to sue and be sued waived the entity's immunity from suit under the TTCA or TCHRA, and we are not aware of any.[74]

■■■ Second, if a general statutory provision conflicts with a special provision, the provisions shall be construed, if possible, so that effect is given to both.[75] A

"sue and be sued" provision is a general consent to suit.[76] The TTCA, on the other hand, is a special provision by which the Legislature has waived immunity from suit only to a limited degree.[77] Construing the health and safety code and the TTCA and TCHRA so that effect is given to both, we hold that, while the Legislature has generally consented to suit against the Hospital District, that consent is limited by the TTCA and TCHRA.[78]

■■■ Moreover, where general and special statutory provisions are irreconcilable, the special provision prevails as an exception to the general unless the general provision was enacted later and the Legislature's manifest intent is that the general provision prevail.[79] The predecessor to the "sue and be sued" clause in what is now the health and safety code was enacted in 1955, but the TTCA was not enacted until 1969.[80] The TCHRA was enacted even later, in 1983.[81] Thus, even if we were to conclude that the conflict between

72. *Mo. Pac.,* 453 S.W.2d at 813–14 (holding that no allegation of consent to suit is required where there is a general statute authorizing governmental entity to sue and be sued).

73. *Id.* at 813 (construing "sue and be sued" provision as consent to sue for breach of railroad track agreement).

74. *See, e.g., Fed. Sign,* 951 S.W.2d at 408 (construing "sue and be sued" provision as consent to sue for breach of contract for construction of basketball arena scoreboards); *Alamo Comm. Coll. Dist.,* 980 S.W.2d at 748 (contract for drainage project); *Loyd,* 956 S.W.2d at 122–23 (implied contract to supply noncorrosive water).

75. *See* TEX GOV'T CODE ANN. § 311.026(a) (Vernon 1998).

76. *Mo. Pac.,* 453 S.W.2d at 813–14.

77. *Dallas County MHMR,* 968 S.W.2d at 343; *see also City of Dallas v. Mitchell,* 870 S.W.2d

21, 22–23 (Tex.1994) (holding that TTCA is specific statute that controls over conflicting provisions in civil practice and remedies code).

78. *See, e.g., Loyd,* 956 S.W.2d at 123–24 (applying "sue or be sued" provision as waiver of immunity from suit for breach of contract claims but not for tort claims outside scope of TTCA).

79. TEX. GOV'T CODE ANN. § 311.026(b) (Vernon 1998).

80. *See* Act of April 29, 1955, 54th Leg., R.S., ch. 257, § 5, 1955 Tex. Gen. Laws 715, 719 (amended 1967) (current version at TEX. HEALTH & SAFETY CODE ANN. § 281.056(a)); Act of May 14, 1969, 61st Leg., R.S., ch. 292, § 3, 1969 Tex. Gen. Laws 874, 875 (amended 1973, 1983) (current version at TEX. CIV. PRAC. & REM.CODE ANN. § 101.021).

81. *See* Act of June 25, 1983, 68th Leg., 1st C.S., ch. 7, 1983 Tex. Gen. Laws 37.

the provisions is irreconcilable, the TTCA and TCHRA provisions would prevail because they are special provisions and were enacted after the "sue and be sued" clause at issue.

### E. Exemplary Damages.

■ In its fifth issue, the Hospital District contends the trial court erred in denying its plea to the jurisdiction on Henry's claims for exemplary damages under the TTCA and TCHRA. Whether exemplary damages are available under the TTCA or TCHRA does not affect a trial court's subject matter jurisdiction over a case; it affects only the amount of a potential damages award. Thus, we believe this issue is an affirmative defense or matter of avoidance rather than a jurisdictional issue.[82] However, Henry concedes that neither the TTCA nor the TCHRA authorizes exemplary damages against a governmental entity.[83]

■ Henry contends that this complaint is waived because the trial court struck the Hospital District's pleadings. Waiver only occurs when a complaint is not raised in the trial court.[84] In this case, it is undisputed that the Hospital District raised the exemplary damages issue below in its answers to several versions of Henry's petition and in its plea to the jurisdiction. Further, because a sovereign would have no liability absent legislative consent to suit and liability, a sovereign cannot not

waive the damage limits imposed by the Legislature by failing to plead them.[85]

In addition, because Henry has not stated a claim under the TTCA, point five is moot as it relates to the TTCA. We sustain the Hospital District's fifth issue.

## IV. PETITION FOR WRIT OF MANDAMUS

### A. Sanctions Motions, Orders, and Relief Sought

In the latter half of 1999, Henry filed three motions for sanctions against the Hospital District. Henry's first and second motions were based on the following alleged conduct:

- after anticipating the underlying litigation, the Hospital District shredded hand-written notes from witness interviews conducted between August 21 and September 5, 1997;

- the Hospital District destroyed hand-written notes from a September or October 1997 meeting between some of its managers and Henry;

- after the trial court entered a November 9, 1998 production order, the Hospital District failed to produce some of the documents until April 19, 1999 (one day before 2 defense depositions) and others until July 8, 1999 (3 weeks after Henry's original motion for sanctions was filed);

---

82. *See, e.g., City of Cleburne v. Trussell,* 10 S.W.3d 407, 410 (Tex.App.—Waco 2000, no pet.) (holding that plea to jurisdiction was not appropriate vehicle to contest type of damages plaintiffs sought).

83. *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.024 (Vernon 1997) (providing that TTCA "does not authorize exemplary damages"); Tex. Lab.Code Ann. § 21.2585(b) (Vernon Supp.2001) (excluding governmental entities from defendants against which punitive damages are recoverable).

84. Tex.R.App. P. 33.1(a); *Bushell v. Dean,* 803 S.W.2d 711, 712 (Tex.1991) (op. on reh'g).

85. *Whipple v. Deltscheff,* 731 S.W.2d 700, 705 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.); *City of Houston v. Arney,* 680 S.W.2d 867, 874–75 (Tex.App.—Houston [1st Dist.] 1984, no writ), *disapproved on other grounds by Univ. of Tex. Med. Branch v. York,* 871 S.W.2d 175 (Tex.1994).

- the Hospital District failed to produce other documents and an audiotape until July 29, 1999.

After a hearing, on September 22, 1999, the trial court assessed the following sanctions against the Hospital District:

- ordered the Hospital District to pay Henry $3,750 in attorney's fees;
- ordered the Hospital District to make Linda Archangel, dean of the Institute, and Judith Redd, Archangel's supervisor, available for deposition and to bear the court reporter's fees and other costs associated with the depositions;
- ordered that an instruction on spoliation of evidence would be included in the jury charge at trial.

The Hospital District paid the attorney's fees and deposition costs. Three months later, Henry filed a third motion for sanctions, alleging that the Hospital District:

- altered the diary of Donna Mitchell, Henry's direct supervisor and good friend;
- failed to produce supplemental police reports that were eventually produced by the reporting officer at his deposition;
- failed to produce a "taped deposition" of Henry that is referenced in the supplemental police reports;
- altered Henry's final contract with the Hospital District;
- waited until November 1999 to produce a work-place violence policy that Graves allegedly violated, as well as 16 other pages of documents, and questioned Mitchell at her deposition with still other documents that had not been produced.

After another hearing, on February 23, 2000, the trial court entered an order:

- striking the Hospital District's pleadings;
- barring the Hospital District from conducting any further discovery in the underlying case;
- assessing all then-accrued court costs against the Hospital District;
- ordering the Hospital District to pay $9,600 of Henry's attorney's fees;
- ordering the Hospital District to pay $10,000 in attorney's fees if it sought mandamus relief from the February 23 order;
- ordering the Hospital District to disclose to Henry the details of "the mid-September, 1997 meeting."

The Hospital District seeks mandamus relief from this order in its entirety. The Hospital District also seeks mandamus relief from portions of the trial court's November 9, 1998 production order and September 22, 1999 sanctions order. These latter claims for relief are barred by laches because the Hospital District did not seek relief from these orders until May 12, 2000.[86] Accordingly, we will not consider the Hospital District's complaints concerning the November 1998 and September 1999 orders. However, we conditionally grant mandamus relief from part of the February 23, 2000 sanctions order.

### B. Standard of Review

In deciding whether a writ of mandamus is appropriate, we recognize that mandamus will issue only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy at law.[87] A trial

**86.** *Rivercenter Assocs. v. Rivera,* 858 S.W.2d 366, 367 (Tex.1993) (orig.proceeding); *Calla-* *han v. Giles,* 137 Tex. 571, 155 S.W.2d 793, 795 (1941) (orig.proceeding).

**87.** *Republican Party v. Dietz,* 940 S.W.2d 86,

court clearly abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law.[88] Appellate courts will not intervene to control incidental trial court rulings when an adequate remedy by appeal exists.[89] An appellate remedy is not inadequate merely because it might involve more expense or delay than obtaining a writ of mandamus.[90] An appeal from a case-determinative, death-penalty sanction is inadequate, however, unless the sanction is imposed simultaneously with a final, appealable judgment.[91]

In conducting our review, we are not limited to a review of the "sufficiency of the evidence" to support the trial court's ruling; rather, we make an independent inquiry of the entire record to determine if the court abused its discretion in imposing the sanction.[92] An order imposing discovery sanctions may be reversed for an abuse of discretion even if findings and evidence support it.[93]

### C. February 23, 2000 Sanctions Order

#### 1. Death–Penalty Sanctions

 We cannot tell from the record why the trial court believed the striking of

the Hospital District's pleadings, a death-penalty sanction, was warranted in this case. The trial court did not offer any explanation for the sanctions listed in the February 23 order that might guide this court in our review of the sanctions.[94] Discovery sanctions cannot be used to adjudicate the merits of a party's claims or defenses unless the party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit.[95] We have carefully reviewed the entire record, and it does not contain evidence that would justify such a presumption.[96] Further, our disposition of the Hospital District's appeal shows that several of its sovereign immunity defenses have merit.

We sympathize with the difficulties the trial court faced in sifting through the complex evidence regarding the Hospital District's discovery abuses and in dealing with an ostensible pattern of repeated abuses. Nonetheless, we are constrained to hold that the striking of the Hospital District's pleadings was excessive under the circumstances presented here and was therefore unjust.[97] Consequently, the trial court abused its discretion by assessing this death-penalty sanction.

88 (Tex.1997) (orig.proceeding).

**88.** *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992) (orig.proceeding).

**89.** *Id.* at 840.

**90.** *In re Ford Motor Co.,* 988 S.W.2d 714, 722–23 (Tex.1998) (orig.proceeding); *Walker,* 827 S.W.2d at 842.

**91.** *GTE Comm'ns Sys. v. Tanner,* 856 S.W.2d 725, 732 (Tex.1993) (orig.proceeding).

**92.** *Chrysler Corp. v. Blackmon,* 841 S.W.2d 844, 852 (Tex.1992) (orig.proceeding); *U.S. Fidelity and Guar. Co. v. Rossa,* 830 S.W.2d 668, 672 (Tex.App.—Waco 1992, writ denied).

**93.** *IKB Indus. Ltd. v. Pro–Line Corp.,* 938 S.W.2d 440, 442 (Tex.1997).

**94.** *See Chrysler Corp.,* 841 S.W.2d at 852 (stating that trial court's explanation on the record of why it believes death-penalty sanctions are justified may be sufficient to guide appellate court in its review of sanctions order).

**95.** *TransAm. Nat. Gas Corp. v. Powell,* 811 S.W.2d 913, 918 (Tex.1991) (orig.proceeding).

**96.** *See Chrysler Corp.,* 841 S.W.2d at 852–53 (vacating death-penalty sanctions where review of record showed no evidence that would justify presumption that Chrysler's defenses lacked merit).

**97.** *See* Tex.R. Civ. P. 215.2(b) (providing that trial court may order such sanctions as are just); *TransAm. Nat. Gas. Corp.,* 811 S.W.2d at 917 (holding that, to be just, there must be a direct relationship between offensive conduct and sanctions imposed, and sanctions must not be excessive).

## 2. Remainder of order

The trial court also abused its discretion by barring the Hospital District from conducting any further discovery and by ordering the Hospital District to disclose to Henry the details of "the mid-September, 1997 meeting." Henry did not specifically seek this relief in her third motion for sanctions, and that motion does not allege any wrongdoing with respect to any Hospital District meeting. Absent such notification, this portion of the February 23 order is a nullity.[98] A court has no power to violate a party's due process rights by investigating possible sanctionable conduct—by hearing or by nonhearing—without notice.[99]

Finally, the Hospital District is entitled to mandamus relief from the trial court's $10,000 unconditional attorney's fees award. An unconditional award of appellate or mandamus attorney's fees is a clear abuse of discretion subject to mandamus relief.[100] Although a trial court may grant attorney's fees as part of a sanctions order, the court must condition the award on the outcome of the appeal or original proceeding.[101]

The Hospital District is not entitled to mandamus relief from the portion of the February 23 order requiring it to pay court costs and $9,600 of Henry's attorney's fees incurred in the trial court. These are incidental trial court rulings from which the Hospital District has an adequate remedy by appeal.[102]

## V. CONCLUSION

We reverse the trial court's order denying the Hospital District's plea to the jurisdiction as to Henry's intentional tort and negligence claims brought under the TTCA and render judgment that the Hospital District is immune from suit on those claims. We also render judgment that Henry is not entitled to recover exemplary damages from the Hospital District under the TTCA or the TCHRA.

We affirm the trial court's order denying the Hospital District's plea to the jurisdiction as to Henry's breach of contract claim and her claims brought under the TCHRA.

We conditionally grant the Hospital District's petition for writ of mandamus as to the February 23, 2000 order striking the Hospital District's pleadings, barring all further discovery by the Hospital District, ordering the Hospital District to pay $10,000 in attorney's fees if it sought mandamus relief from the February 23, 2000 order, and ordering the Hospital District to disclose to Henry the details of "the mid-September, 1997 meeting." We direct the trial court to vacate these portions of its order. Our writ will issue only if the trial court fails to do so. We deny the remainder of the Hospital District's petition for writ of mandamus.

98. *Ex parte Blanchard,* 736 S.W.2d 642, 643 (Tex.1987); *In re Acceptance Ins. Co.,* 33 S.W.3d 443, 449 (Tex.App.—Fort Worth 2000, orig. proceeding).

99. *Acceptance Ins. Co.,* 33 S.W.3d at 451.

100. *Ford Motor Co.,* 988 S.W.2d at 720–21, 723.

101. *Id.* at 721.

102. *Id.* at 722; *Walker,* 827 S.W.2d at 840.