Cheryl L. PURDIN, Appellant

v.

COPPERAS COVE ECONOMIC DEVELOPMENT CORPORATION, Appellee.

No. 10–02–00331–CV.

Court of Appeals of Texas, Waco.

July 21, 2004.

---

David R. Schleicher, Law Office of David R. Schleicher, Waco, for Appellant.

Regina C. Williams, Thompson & Knight, L.L.P., Austin, Bryan P. Neal, Thompson & Knight, L.L.P., Dallas, for Appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.*

## OPINION

BILL VANCE, Justice.

We must decide whether an economic development corporation organized under article 5190.6, section 4A is an "employer" for purposes of application of the Texas Commission on Human Rights Act.

The Copperas Cove Economic Development Corporation ("CCEDC") was created in 1990 under the Development Corporation Act of 1979 ("Act"). TEX.REV.CIV. STAT. ANN. art. 5190.6, § 4A (Vernon Supp. 2004). The Articles of Incorporation express its purpose:

> The Corporation is organized exclusively for the purposes of benefitting and accomplishing public purposes of, and to act on behalf of, the City of Copperas Cove, Texas, may issue bonds on behalf of the City of Copperas Cove, Texas and receives, secures, and disburses tax proceeds from the half cent sales tax for economic development, and the specific

---

* This case was submitted with former Chief Justice Davis on the panel, but he resigned effective August 4, 2003. Justice Reyna, who took office on January 5, 2004, participated in the decision.

purposes for which the Corporation is organized are the promotion and development of commercial, industrial and manufacturing enterprises to promote and encourage employment and the public welfare, pursuant to, Sections 4(a) and 4A of the Development Corporation Act of 1979, as amended.

Cheryl Purdin was an employee of CCEDC. She claimed that her supervisor, James Johnson, made unwelcome comments to and contact with her of a sexual nature. Furthermore, she claimed that Johnson retaliated against her after she complained to the CCEDC board of directors. In April 1998, she sued Johnson, the City of Copperas Cove, and CCEDC on various claims including sexual harassment and retaliation. Purdin non-suited the City in February 2000, and the trial court, on Purdin's motion, dismissed Johnson from the suit in April 2001.

By amended and supplemental pleadings, Purdin asserted claims against CCEDC solely under the Texas Commission on Human Rights Act (CHRA). TEX. LAB.CODE ANN. ch. 21 (Vernon 1996 & Supp.2004).[1] A trial in March 2002 resulted in a hung jury. In August 2002, CCEDC filed a plea to the jurisdiction claiming that the trial court lacked subject-matter jurisdiction of Purdin's CHRA claims because CCEDC was not an "employer" to which the CHRA applied. The trial court granted the plea in September 2002 and dismissed Purdin's claims. She appeals.

### THE ISSUE ON APPEAL

The sole question on appeal is one of statutory interpretation: whether CCEDC is a "state instrumentality" under the CHRA.[2] This appears to be an issue of first impression.

The CHRA specifies which employers are subject to its provisions:

(8) "Employer" means:

(A) a person who is engaged in an industry affecting commerce and who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year;

(B) an agent of a person described by Paragraph (A);

(C) an individual elected to public office in this state or a political subdivision of this state; or

(D) a county, municipality, state agency, or state instrumentality, regardless of the number of individuals employed.

TEX. LAB.CODE ANN. § 21.002(8) (Vernon Supp.2004). The word "person" used in subsections "A" and "B" includes a "corporation, organization, government, or governmental subdivision or agency, business trust, estate, trust, partnership, association, and any other legal entity." TEX. GOV'T CODE ANN. § 311.005(2) (Vernon 1998).

Purdin asserts that CCEDC is a "state instrumentality" under "D."[3] CCEDC

---

1. Purdin exhausted her administrative remedies under the CHRA and received authorization from the Commission on Human Rights to file suit.

2. The dissent phrases the question as whether sovereign immunity has been waived. That issue was decided in *Sauls v. Montgomery County,* 18 S.W.3d 310, 315 (Tex.App.-Beaumont 2000, no pet.) ("[T]he Legislature has, in clear and unambiguous language, waived

sovereign immunity against elected public officials and governmental entities defined by the act to be employers....").

3. In her response brief, Purdin also argues that, if CCEDC is the agent of the City of Copperas Cove as asserted by CCEDC in its primary brief, then "B" may apply. CCEDC suggests that her assertion is untimely because it was not made in her primary brief.

counters that a local, non-profit development corporation created by a city was never intended by the Legislature to be a "state instrumentality."

■ We review a trial court's ruling on a plea to the jurisdiction *de novo. Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998).

## STATUTORY CONSTRUCTION RULES

■ We must determine what the Legislature intended by the term "state instrumentality." The traditional rules of statutory construction apply. Statutory construction issues are legal questions reviewed *de novo. Johnson v. City of Fort Worth,* 774 S.W.2d 653, 656 (Tex.1989). In construing a statute, the reviewing court should determine and give effect to the Legislature's intent. *National Liab. & Fire Ins. Co. v. Allen,* 15 S.W.3d 525, 527 (Tex.2000); *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.,* 966 S.W.2d 482, 484 (Tex.1998). The court must first look at the statute's plain and common meaning. *Allen,* 15 S.W.3d at 527; *Fitzgerald v. Advanced Spine Fixation,* 996 S.W.2d 864, 865 (Tex.1999). The court presumes that the Legislature intended the plain meaning of the words it used. *Allen,* 15 S.W.3d at 527. And words, unless used as a term of art or connected with a particular trade or subject matter, are given their ordinary meaning. *In re BACALA,* 982 S.W.2d 371, 380 (Tex.1998); TEX. GOV'T CODE ANN. § 312.002(a) (Vernon 1998). If the statute is unambiguous, the reviewing court typically adopts the interpretation supported by the plain meaning of the statute's words; rules of construction and extrinsic aids should not be applied, nor extraneous matters inquired into. *Id.* (extraneous matters); *Fitzgerald,* 996 S.W.2d at 865–

66 (rules of construction and extrinsic aids).

■ But if the statute is ambiguous, *i.e.,* the intent of the Legislature is not clear, the reviewing court then turns to the legislative history of the statute, the nature and object to be obtained by the statute, and the consequences that would follow from alternative constructions. *In re BACALA,* 982 S.W.2d at 380. Also, the court should consider the entire act when construing a portion of it, *e.g.,* the meaning and use of a term throughout the act. *Jones v. Fowler,* 969 S.W.2d 429, 432 (Tex. 1998).

The Code Construction Act provides the factors the court *may* consider:

In construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider among other matters the:

(1) object sought to be attained;

(2) circumstances under which the statute was enacted;

(3) legislative history;

(4) common law or former statutory provisions, including laws on the same or similar subjects;

(5) consequences of a particular construction;

(6) administrative construction of the statute; and

(7) title (caption), preamble, and emergency provision.

TEX. GOV'T CODE ANN. § 311.023 (Vernon 1998).

## THE PARTIES' ARGUMENTS

The Legislature has not defined "instrumentality" or "state instrumentality." To support their positions about what the words mean, the parties have not conducted an analysis under the rules of statutory

Because of our resolution of Purdin's issue under "D," we do not reach that inquiry.

construction. Rather they rely on inferences from statutes, case law, and the Federal Constitution.

### Purdin's Arguments

Purdin refers to section 22 of the Act, a section on the corporation's bond-issuing powers. The section is entitled: "Bonds not debt of state or political subdivision; corporation as constituted authority and *instrumentality* but not political subdivision or corporation." (Emphasis added). It says, in part:

> The corporation when established and created pursuant to the terms of the Act shall be a constituted authority and an *instrumentality* (within the meaning of those terms in the regulations of the treasury and the rulings of the Internal Revenue Service prescribed and promulgated pursuant to Section 103 of the Internal Revenue Code of 1954, as amended) and shall be authorized to act on behalf of the unit under whose auspices it is created for the specific public purpose or purposes authorized by such unit....

TEX.REV.CIV. STAT. ANN. art. 5190.6, § 22 (Vernon Supp.2004) (emphasis added). Apparently, the regulations of the Treasury Department and the rulings of the Internal Revenue Service use the terms "constituted authority" and "instrumentality" when discussing tax implications for certain governmental entities, and the Legislature, by using the terms in section 22, indicated its intention that development corporations come under those regulations and rulings. Purdin points out that a development corporation is called an "instrumentality" in the title to section 22 and, in the body of the section, is designated an "instrumentality" for IRS purposes. Purdin contends, without authority, that "in-

strumentality" means the same in the Act as it does in the CHRA.

Purdin also relies on *Tarrant County Hosp. Dist. v. Henry*, 52 S.W.3d 434 (Tex. App.-Fort Worth 2001, no pet.). Henry sued a hospital district under the CHRA. *Id.* at 434. The Fort Worth court held that the district was a "state instrumentality" under section 21.002(8)(D). *Id.* at 446. The court relied on the definition of "instrumentality" in Black's Dictionary—"[a] means or agency through which a function of another entity is accomplished, such as a branch of a governing body"—and concluded that a hospital district came within the definition. *Id.* at 445–46; BLACK'S LAW DICTIONARY 802 (7th ed.1999). The court noted that it is inconsistent to find that a hospital district is not a branch of the State when (a) it has been created under the authority of the Texas Constitution and the Legislature, and (b) it has sovereign immunity. *Id.* at 446. Similarly, development corporations have been created under the authority of the Legislature and have sovereign immunity. TEX.REV.CIV. STAT. ANN. art. 5190.6, § 4A(j); *Rayl v. Borger Economic Development Corp.*, 963 S.W.2d 109, 114 (Tex.App.-Amarillo 1998, no pet.). Thus, arguing from *Henry*, Purdin contends they are also "state instrumentalities" under the CHRA.

Purdin also cites our holding in *Crow v. Rockett Special Utility Dist.*, in which we found that a special utility district was a "state instrumentality" under the CHRA because it was created under the authority of the Texas Constitution and is an agent of the State exercising the State's police powers. *Crow v. Rockett Special Utility Dist.*, 17 S.W.3d 320, 325 (Tex.App.-Waco 2000, pet. denied). We found that "agent" is a synonym for "instrumentality." *Id.* (citing THE NEW AMERICAN ROGET'S COLLEGE THESAURUS 260 (rev. ed.1978)).[4]

---

4. We also found in *Vela v. Waco Indep. School Dist.* that an independent school district is an

Purdin concludes by pointing out that: (a) CCEDC was created by a city, which is a political subdivision of the State, (b) its board of directors was appointed by the city, (c) it administers sales taxes levied by the city, and (d) it is subject to the open records and meetings laws. TEX.REV.CIV. STAT. ANN. art. 5190.6, § 4A(b), (c), (f), 11(b), 14A (Vernon Supp.2004). She asks: "How is it that a sales-tax funded entity that has income on its bonds exempt from IRS taxation because it is a state instrumentality, that must comply with open meetings and records laws, and which benefits from the immunities and liability limitations afforded by the Texas Tort Claims Act, can suddenly consider itself non-governmental when it comes to the discrimination law?" (BRIEF OF APPELLANT p. 8).

### CCEDC'S Arguments

CCEDC responds with several arguments.

*First Argument:*

CCEDC says it is an instrumentality of the city, not of the state. It points out that development corporations are created by cities, which then exercise control over them by appointing their boards of directors. TEX.REV.CIV. STAT. ANN. art. 5190.6, § 4A(b), (c). Furthermore, development corporations are not political subdivisions, and they do not have some traditional powers of political subdivisions, *e.g.,* to raise tax revenue or to exercise eminent domain or police powers. *Id.* art. 5190.6, § 4A(d), (g), 22 (Vernon Supp.2004).

*Second Argument:*

CCEDC asserts that, because it would not be a "state instrumentality" under Eleventh Amendment law, it is not one under the CHRA. CCEDC argues that it resembles governmental entities that the

courts have determined are not "arms of the state" under Eleventh Amendment law, which prohibits a suit against a state in federal court by a citizen of either another state or a foreign state. U.S. CONST. amend. XI. The bar also applies to a suit against a state by its own citizen. *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974); *San Antonio Indep. School District v. McKinney,* 936 S.W.2d 279, 281 (Tex. 1996). "States" may include certain "state agents and state instrumentalities" if they are "arms of the state." *Regents of the University of California v. Doe,* 519 U.S. 425, 429–30, 117 S.Ct. 900, 903–04, 137 L.Ed.2d 55 (1997). Of "considerable importance" in determining if Eleventh Amendment immunity applies is whether the state would be obligated to pay a money judgment against the entity. *Id.,* 519 U.S. at 431, 117 S.Ct. at 904. CCEDC cites *Williams v. Dallas Area Rapid Transit,* 242 F.3d 315 (5th Cir.2001), and *McKinney,* 936 S.W.2d at 279.

*Third Argument:*

CCEDC attacks Purdin's argument that the word "instrumentality" in article 5190.6, § 22 has the same meaning as "state instrumentality" in the CHRA. CCEDC points out that the word "state" is not contained in section 22. Then it cites to a 1957 administrative ruling of the IRS construing section 103 of the Internal Revenue Code. Rev. Rul. 57–187, 1957–1 C.B. 65, 1957 WL 11962(RRU). Section 103 excludes from gross income the interest on "any State or local bond," which is defined as "an obligation of a State or political subdivision thereof." 26 U.S.C. § 103 (2002). Ruling 57–187 held that an Industrial Development Board, created by

---

"employer" under subsection 8(D) of the CHRA. *Vela v. Waco Indep. School Dist,* 69 S.W.3d 695, 699 (Tex.App.-Waco 2002, pet.

withdrawn by agr.). Our opinion in *Vela,* however, has been withdrawn.

Alabama statute and fulfilling purposes similar to development corporations, falls under the "political subdivision" umbrella of section 103, because the bonds "are considered issued in behalf of a municipality, a political subdivision of the State." CCEDC concludes that the Ruling supports its position that entities like development corporations are instrumentalities of the city, not "state instrumentalities."

*Fourth Argument:*

Next, CCEDC argues that, although development corporations have characteristics that are usually associated with governmental entities, such as requirements under the open meetings and open records acts and the administration of sales taxes, that does not necessarily establish that they are "state instrumentalities."

*Fifth Argument:*

Finally, CCEDC argues that, as a matter of public policy, it should be excluded from "state instrumentalities." It says that under section 21.002(8)(A), employers not specifically listed in other subsections are included under the CHRA only if they have fifteen or more employees. So, to allow a small employer like CCEDC to be sued under "D" circumvents the Legislature's intent in enacting "A" to shield small employers from suit.

## Analysis

 The meaning of "state instrumentality" and whether development corporations are included is not clearly expressed in the CHRA. Therefore, we may examine, to the extent possible, eight factors:

- any legislative history of the statute, *In re BACALA,* 982 S.W.2d at 380; Tex. Gov't Code Ann. § 311.023;
- the nature and object to be obtained by the statute, *Id.;*
- the consequences that would follow from alternative constructions, *Id.;*
- the circumstances under which the statute was enacted, Tex. Gov't Code Ann. § 311.023;
- the common law or former statutory provisions, including laws on the same or similar subjects, *Id.;*
- any administrative construction of the statute, *Id.;*
- the title (caption), preamble, and emergency provision, *Id.;* and
- the entire act, including the meaning and use of a term throughout the act, *Fowler,* 969 S.W.2d at 432.

Reviewing under these factors, we have not found any helpful legislative history. And the term "state instrumentality" is not used elsewhere in the statutes. Neither the title, preamble, or emergency provisions of the statute provide assistance. Nor is there any common law defining the term.

As for any administrative construction of the statute, Purdin received a "right to sue" letter from the Commission on Human Rights. Tex. Lab.Code Ann. § 21.252 (Vernon 1996). Therefore, the Commission exercised jurisdiction over CCEDC.

The circumstances that would follow from alternative constructions are (a) under Purdin's construction, more employees of certain government-related entities would be protected under the CHRA and (b) under CCEDC's construction, fewer employees would be protected.[5]

---

**5.** Contrary to the dissent's assertion concerning our favoring personal rights over the economic interest of CCEDC, the CHRA was expressly adopted to secure freedom from discrimination in employment to protect person-
al dignity, make available to the state the full productive capacities of persons in this state, and promote the interests, rights, and privileges of persons in this state. Tex. Lab.Code Ann. § 21.001(4), (5), (8) (Vernon 1996).

The nature and object of the CHRA, and to an extent the circumstances under which it was enacted, are expressed in section 21.001 of the act:

The general purposes of this chapter are to:

(1) provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments (42 U.S.C. Section 2000e et seq.);

(2) identify and create an authority that meets the criteria under 42 U.S.C. Section 2000e–5(c) and 29 U.S.C. Section 633;

(3) provide for the execution of the policies embodied in Title I of the Americans with Disabilities Act of 1990 and its subsequent amendments (42 U.S.C. Section 12101 et seq.);

(4) secure for persons in this state, including persons with disabilities, freedom from discrimination in certain employment transactions, in order to protect their personal dignity;

(5) make available to the state the full productive capacities of persons in this state;

(6) avoid domestic strife and unrest in this state;

(7) preserve the public safety, health, and general welfare; and

(8) promote the interests, rights, and privileges of persons in this state.

TEX. LAB.CODE ANN. § 21.001 (Vernon 1996). The broad interests expressed in this section support the conclusion that the Legislature intended for the prohibitions in chapter 21 to be generally applied. *Id.* The wording of the limitation on private-sector employees, *i.e.,* "engaged in an industry affecting commerce and who has 15 or more employees," tends to show that the term "state instrumentality" was intended to include entities regardless of size which exercise functions usually associated with state government. *Id.* § 21.002(8)(A), (D).

Finally, examining the entire act, former statutory provisions, and laws on the same or similar subjects, we find that when the CHRA was codified in the Labor Code in 1993, subsection 21.002(8)(D), then "6(C)," provided: "a county, municipality, state agency, or state instrumentality, including a public institution of education, regardless of the number of individuals employed." "State agency" was not defined. In 1997, by amendment, the phrase "including a public institution of education" was deleted from "D," and subsection "14" was enacted, which reads:

"State agency" means:

(A) a board, commission, committee, council, department, institution, office, or agency in the executive branch of state government having statewide jurisdiction;

(B) the supreme court, the court of criminal appeals, a court of appeals, or the State Bar of Texas or another judicial agency having statewide jurisdiction; or

(C) an institution of higher education as defined by Section 61.003, Education Code.

*Id.* § 21.002(14) (Vernon Supp.2004). The Legislature went to great lengths in subsections "8(D)" and "14" to include a wide array of governmental entities under the CHRA. The list includes elected officials, counties, municipalities, agencies in the executive branch if they have statewide jurisdiction, courts, judicial agencies if they have statewide jurisdiction, and institutions of higher learning. Each of these performs public functions defined by the Legislature.

We conclude from our review of the eight factors that the Legislature intended "state instrumentalities" to be a category

which includes entities, other than those listed in subsections "8(D)" and "14," that perform public functions as defined by the Legislature. Thus, we turn to an inquiry of what functions the Legislature has authorized CCEDC to perform, and whether those functions are ones usually or customarily performed by state government, *i.e.*, state functions. In particular, we must determine if economic development—the primary function of development corporations under the Act—is a state function.

Based on express language used by the Legislature, we find that economic development has been determined to be a function of state government. The "Findings and Construction" of section 3 of the Act are:

(a) It is hereby found, determined, and declared:

(1) that the present and prospective right to gainful employment and *general welfare of the people of this state* require as a public purpose the promotion and development of new and expanded business enterprises and the promotion and development of job training;

(2) that the existence, development, and expansion of business, commerce, industry, and job training are *essential to the economic growth of the state and to the full employment, welfare, and prosperity of its citizens;*

(3) that the assistance provided by industrial development corporations in promoting higher education opportunities *will encourage and foster the development and diversification of the economy of the state and the elimination of unemployment and underemployment in the state;*

(4) that the means and measures authorized by this Act and the assistance provided in this Act, especially with respect to financing, *are in the public interest and serve a public purpose of the state in promoting the welfare of the citizens of the state* economically by the securing and retaining of business enterprises and the resulting maintenance of a higher level of employment, economic activity, and stability;

(5) that community industrial development corporations in Texas have themselves invested substantial funds in successful industrial development projects and have experienced difficulty in undertaking such additional projects by reason of the partial inadequacy of their own funds or funds potentially available from local subscription sources and by reason of limitations of local financial institutions in providing additional and sufficiently sizable first mortgage loans; and

(6) that communities in this state are at a critical disadvantage in competing with communities in other states for the location or expansion of such enterprises by virtue of the availability and prevalent use in all other states of financing and other special incentives; *therefore, the issuance of revenue bonds by corporations on behalf of political subdivisions of the state as hereinafter provided for the promotion and development of new and expanded business enterprises to provide and encourage employment and the public welfare is hereby declared to be in the public interest and a public purpose.*

(b) This Act shall be liberally construed in conformity with the intention of the legislature herein expressed.

TEX.REV.CIV. STAT. ANN. art. 5190.6, § 3 (Vernon Supp.2004) (emphasis added). Thus, the section repeatedly says that it was enacted to benefit the people of Texas and is for the public welfare of the State,

and was not enacted merely as a convenience for cities and counties to benefit themselves.

That economic development is a function of state government is also shown by the fact that, in 1989, section 1 of an amending statute found:

FINDINGS AND POLICY. It is the finding, policy, intent, and determination of the legislature that:

(1) Texas has continuing needs for the creation of new job opportunities and enhancement of existing job opportunities;

(2) it is desirable that economic development take place to stimulate the economy of local and state government;

(3) local government should have the necessary powers to enable it to take the lead in economic development, and local self-determination should be maintained to the maximum extent practical;

(4) protecting the environment and other natural resources is essential to the orderly and proper economic development of an area and should be given high priority;

(5) enhancement of tax revenues to other local and state governmental entities will occur as a result of successful economic growth; and

(6) successful economic development depends on a viable working relationship between the public and private sectors and it is the intent of this Act to foster and further that cooperative effort. ·

Act of June 14, 1989, 71st Leg., R.S., ch. 877, § 1, 1989 Tex. Gen. Laws 3871. Here the Legislature made it clear that economic development is a goal and function of government at all levels.

Additional support for our finding comes from the fact that, when the Act was amended in 1991, section 1 of the amending statute stated:

The legislature finds for all constitutional and statutory purposes that the authority granted by this Act is for the public purposes of development and diversification of the economy of the state and an eligible city, the elimination of unemployment or underemployment in the state and an eligible city, and the expansion of commerce in the state and that this Act accomplished those public purposes.

Act of March 28, 1991, 72nd Leg., R.S., ch. 11, § 1, 1991 Tex. Gen. Laws 37.

Lastly, CCEDC's own Articles of Incorporation support our finding, because it provides that CCEDC exists for the "public purpose ... [of] the promotion and development of commercial, industrial and manufacturing enterprises to promote and encourage employment and the public welfare." Notably, the employment and welfare goals are not limited to residents of the City, but apply to the "public" generally.

From these provisions, we determine that the stated legislative goals of the Act and the public purposes of CCEDC favor a conclusion that development corporations are "state instrumentalities." But, in addition, we may rely on common sense and public policy. We see no logical reason why the Legislature would have intended to exclude entities like development corporations (and special utility districts, hospital districts, and independent school districts) from the CHRA. By including an extensive list of government-related individuals and entities in subsections "8(D)" and "14," by specifically not limiting the description of governmental entities to those with fifteen or more employees, and by providing a separate category to in-

clude other undefined entities, the logical conclusion is that the Legislature intended for the prohibitions against discrimination contained in the CHRA to apply to most if not all entities performing public functions.

■ We conclude that economic development corporations under the Act perform public functions and are "state instrumentalities." Other local entities of government, such as hospital and special utility districts, have been found to be "state instrumentalities." *Henry*, 52 S.W.3d at 446; *Rockett*, 17 S.W.3d at 325. Under the reasoning of the Fort Worth Court of Appeals, with which we agree, the definition of "instrumentality" in Black's Dictionary—"[a] means or agency through which a function of another entity is accomplished, such as a branch of a governing body"—leads to our conclusion. And because CCEDC was created under authority granted by the Legislature to enhance economic development, which is a state and local function, *Henry* supports our conclusion.

We arrive at our construction of "state instrumentality" after considering CCEDC's arguments, which do not persuade us. To begin, there are a number of difficulties with its first argument that CCEDC is an instrumentality of the city, not the state.

- The argument fails to consider the public nature of the duties of CCEDC under section 3 of the Act, as we have outlined.
- CCEDC's assertion that there is little or no involvement of the State with development corporations is misplaced. For example:
 - The Act creates a Texas Small Business Industrial Development Corporation to "carry out the public purposes of the act." TEX.REV.CIV. STAT. ANN. art. 5190.6, § 4(b).

- The Department of Labor, "with the assistance of the Texas Commission on Environmental Quality, may encourage the cleanup of contaminated property by corporations created under this section through the use of sales and use tax proceeds," which requires the approval of the citizens of the city. *Id.* art. 5190.6, § 4A(t).
- Each development corporation created by a city must submit an annual one-page report to the State Comptroller stating information such as objectives, revenues, expenditures, assets, and "any other information the comptroller requires to determine the use of the sales and use tax" collected. *Id.* art. 5190.6, § 4C(a), (b).
- The Comptroller may impose a monetary penalty for late filing of the report. *Id.* art. 5190.6, § 4C(d).
- "The [Labor department] shall approve the contents of any lease, sale, or loan agreement made under this Act. The department shall prescribe rules and regulations setting forth minimum standards for project eligibility and for lease, sale, and loan agreements and guidelines with respect to the business experience, financial resources, and responsibilities of the lessee, purchaser, or borrower under any such agreement, but in no event shall the department approve any agreement unless it affirmatively finds that the project sought to be financed is in furtherance of the public purposes of this Act. Appeal from any adverse ruling or decision of the department under this subsection may be made by the corporation to the District Court of Travis County.... The department by rule shall require corporations to file fee sched-

ules and bond procedures...." *Id.* art. 5190.6, § 24(a), (e).

- At least once in each 24–month period, representatives of both the city and the development corporation must attend a training seminar sponsored by the Labor Department. *Id.* art. 5190.6, § 39.

These provisions lead to the conclusion there is significant involvement at the State level in the oversight and operation of development corporations.

- The fact that other entities, such as hospital districts and special utility districts, which have been held to be "state instrumentalities" under the CHRA, are also political subdivisions created by the Texas Constitution, does not inherently preclude non-political subdivisions from being "state instrumentalities." If that were true, the Legislature would have used the term "political subdivision" in section 21.002(8)(D) instead of "state instrumentality."

CCEDC's second argument is that it can be inferred from Eleventh Amendment law that it is not a "state instrumentality." In the cases it cites, however, the question was not whether the entities were "state instrumentalities" under Texas law. Rather, the question was whether they were entitled to Eleventh Amendment immunity under the law applicable thereto, *i.e.*, whether they are "arms of the state." CCEDC's argument fails because the questions of whether an entity is a "state instrumentality" and whether it is an "arm of the state" under Eleventh Amendment law are separate; *i.e.*, an entity may be a "state instrumentality" even though it does not have Eleventh Amendment immunity as an "arm of the state." Thus, this argument does not answer our inquiry.

In *Dallas Area Rapid Transit*, the Fifth Circuit found that whether DART was a "governmental unit" under Texas statutes is not the relevant inquiry under the Eleventh Amendment, which requires a determination that the entity is an "arm of the state." *Dallas Area Rapid Transit*, 242 F.3d at 319. "Arm of the state" is narrower than "governmental unit" and does not include cities, counties, and school boards. *Id.* at 318 n. 1. The court applied a six-part test to determine whether DART was an "arm of the state," immune from suit under the Eleventh Amendment. *Id.* at 319–22.[6] The court held that DART is not an "arm of the state." *Id.* at 322.

In *McKinney*, the Supreme Court held that an independent school district is "more like a county or city than it is like an arm of the state," and therefore it is not entitled to Eleventh Amendment immunity. *McKinney*, 936 S.W.2d at 280. The Court pointed out that the Eleventh Amendment does not apply to "political subdivisions" such as counties and cities. *Id.* at 282.

The third argument made by CCEDC is that "instrumentality" does not have the same meaning under the Act and the CHRA. Our holding does not depend on

---

**6.** The six factors are:

(1) whether the state statutes and case law characterize the agency as an arm of the state;

(2) the source of funds for the entity;

(3) the degree of local autonomy the entity enjoys;

(4) whether the entity is concerned primarily with local, as opposed to statewide, problems;

(5) whether the entity has authority to sue and be sued in its own name; and

(6) whether the entity has the right to hold and use property.

*Williams v. Dallas Area Rapid Transit*, 242 F.3d 315 (5th Cir.2001).

their being the same, and it does not resolve the issue.

Although we agree with CCEDC's fourth argument that the fact that development corporations have characteristics usually associated with governmental entities does not necessarily establish that they are "state instrumentalities," our agreement does not undermine our holding.

Finally, in its fifth argument, CCEDC argues that public policy directs that small, local entities like CCEDC should not be subjected to the liability potential of the CHRA. We have found, however, that the Legislature intended that employees performing public services should be covered under the CHRA.

Applying the rules of statutory construction, and rejecting CCEDC's arguments, we sustain Purdin's issue.

### CONCLUSION

We hold that, under the Texas Commission on Human Rights Act, Copperas Cove Economic Development Corporation is a "state instrumentality" and thus an "employer." We sustain Purdin's issue, reverse the order granting the plea to the jurisdiction, and remand the cause to the trial court for further proceedings consistent with this opinion.

Chief Justice GRAY dissenting.

TOM GRAY, Chief Justice, dissenting.

We have been down this road before. The last time we went this direction, the Texas Supreme Court told us we took a wrong turn.

The majority frames the question we must answer as " . . . whether CCEDC is a 'state instrumentality' under the CHRA." Maj. op. at 293. Or if you prefer, their more general question is " . . . whether an economic development corporation orga-

nized under article 5190.6, section 4A is an 'employer' for purposes of application of the Texas Commission on Human Rights Act." Maj. op. at 292. But the truth is, the question we must answer is whether the legislature clearly and unambiguously waived sovereign immunity for suits brought against economic development districts for retaliation under the TCHRA.

We should go through the same analysis in this case that Justice Jefferson did, writing for a unanimous Texas Supreme Court, in *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692 (Tex.2003). If we go through the same analysis in this case, although some of the factors may be slightly different, the end result would be the same: The legislature did not clearly and unambiguously waive sovereign immunity for suits brought against economic development districts by including the term, "state instrumentality," within the definition of "employer" in the TCHRA.

But this is yet another case in which a majority of this court goes through a long analysis to justify finding a waiver of sovereign immunity. *See Wichita Falls State Hosp. v. Taylor*, 48 S.W.3d 782 (Tex.App.-Waco 2000), *rev'd*, 106 S.W.3d 692 (Tex. 2003). The majority acknowledges that the waiver is not clear and unambiguous when it states: "the meaning of 'state instrumentality' and whether development corporations are included is not clearly expressed in the CHRA." If they would only likewise acknowledge that the waiver of sovereign immunity must be clear and unambiguous, this could be a memorandum, per curiam, opinion.

The majority, however, uses an entirely different analysis than what the Supreme Court used. And it would be a simple process to go through the analysis used by the majority and draw the reader to an opposite conclusion. It is all in what you

choose to emphasize, broad purposes with tangential benefits for people all across the State, as the majority has done, or more localized purposes, those that benefit the public located in and around the City of Copperas Cove. The charter, for example, which defines the limited purposes of the CCEDC, states its purpose as being "exclusively for the purpose of benefitting and accomplishing public purposes of, and to act on behalf of, the City of Copperas Cove...."

One frightening collateral aspect of the majority's analysis could be the State of Texas's liability not only for this litigation, but also for CCEDC's bonds. If CCEDC is a state instrumentality, the bond debt that it incurs may therefore be a State debt, and it may be necessary to have that debt approved by a constitutional amendment. TEX. CONST. art. III, § 49; *Texas Public Bldg. Authority v. Mattox*, 686 S.W.2d 924, 928 (Tex.1985) (where bonds were not debts of the State, or any agency, political corporation, or political subdivision of the state and are not a pledge of the faith and credit of any of them, article III, section 49 of the Texas Constitution is not violated). But the enabling statute that authorizes economic development districts specifies that an economic development district's debt is not a State obligation. TEX.REV.CIV. STAT. ANN. art. 5190.6 § 22 (Vernon Supp.2004). This clearly militates against the majority's construction of the statute. And an economic development district is not like other entities that have been determined to be state instrumentalities, those that have the power of eminent domain and, more importantly, the authority to levy and collect taxes to pay for their debts.

The legislature could easily have included all economic development districts under the definition of "employer" if it so desired. But it did not. Further, because of the limited funding for these entities, the legislature may very well have recognized that sovereign immunity was the only way to protect the purposes of the entity from economic devastation due to litigation. And I am not characterizing the merits of Purdin's underlying claim, just acknowledging the cost of litigation. Here we are, years after the events and still litigating the procedural posture of the case.

This case could be the watershed case in sovereign immunity if the Texas Supreme Court is asked to review it. If there is room for weighing policy choices and exercising a significant amount of discretion in favor of finding a waiver of immunity by a judicial review of one of the myriad of definitions within a statute like the TCHRA, as the majority has done, the judicial system in Texas will be forever burdened with an ever increasing number of these cases by creative, smart, policy-oriented lawyers seeking to sway the majority of judges on a particular court to create a waiver through a definition. But in my view, such decisions are for the legislature to make. It is the legislature that must weigh various competing policy factors for and against waiving sovereign immunity. If I was in the legislature, I would conduct just such an evaluation.

But we in the judiciary have been told to find a waiver only if it is clear and unambiguous. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 696 (Tex.2003). And we have also been told that if there is any uncertainty, we should construe the statute as not being a waiver of sovereign immunity. *Id.* at 697. As a judge, I do not have the luxury to make the policy choices for defining "employer" so as to create a waiver of sovereign immunity for Purdin. On the issue before us, under the law as clearly stated in *Wichita Falls State Hospital*, we should not construe "employer"

to include a governmental entity not otherwise clearly included within the scope of the waiver of sovereign immunity.

Because the economic development district is not clearly and unambiguously included within the TCHRA definition of state instrumentality, it is not an "employer" as defined by the TCHRA and as required to constitute a waiver of immunity. If it is not an employer for purposes of the TCHRA, there is no waiver of sovereign immunity by the TCHRA for retaliation as alleged. Without a waiver there is no jurisdiction.

I would affirm the trial court's judgment dismissing Purdin's claim for want of jurisdiction. Because the majority does not, I respectfully dissent.