IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-06-00065-CV

 

Texas Department of Criminal Justice,

                                                                                Appellant

 v.

 

Robert Guard,

                                                                                Appellee

 

 

 



From the 12th District Court

Walker County, Texas

Trial Court No. 21,786

 



MEMORANDUM  Opinion



 








          Robert Guard sued the Texas Department
of Criminal Justice for discrimination and retaliation in violation of the
Texas Labor Code.  The TDCJ challenges the court’s denial of its plea to the
jurisdiction.  We affirm.

STANDARD OF REVIEW

          A plea to the jurisdiction
challenges the trial court’s “power to determine the subject matter of the
suit.”  Vela v.
 Waco Indep. Sch. Dist., 69 S.W.3d 695, 698 (Tex. App.—Waco 2002, pet. withdrawn).  We review a plea “based on sovereign immunity de novo because
the question of whether a court has subject matter jurisdiction is a matter of
law.”  Hoff v.
Nueces County,
153 S.W.3d 45, 48 (Tex. 2004); see Vela, 69 S.W.3d at 698.  Where “the pleading requirement has
been met and evidence has been submitted to support the plea that
implicates the merits of the case, we take as true all evidence favorable to
the nonmovant.”  Tex.
Dep’t of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 228 (Tex. 2004) (citing Sci.
Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997)).  “We indulge every
reasonable inference and resolve any doubts in the nonmovant’s favor.”  Id.

ISSUES PRESENTED

          In its first issue,
the TDCJ argues that it is immune from suit because Guard failed to exhaust
administrative remedies and failed to establish a claim under the Labor Code. 
The TDCJ’s second issue expounds upon its first issue by presenting a myriad of
sub-issues: (1) Guard failed to exhaust administrative remedies; (2) the TDCJ is
not Guard’s employer; (3) Guard cannot establish an adverse employment action
or disparate treatment; and (4) Guard cannot prove a hostile work environment.[1] 
  

“EMPLOYER” REQUIREMENT

Unless waived, sovereign immunity shields
governmental entities from suit.  See Wichita Falls State Hosp. v. Taylor, 106 S.W.3d 692,
696 (Tex. 2003); see also Somervell County Healthcare Auth. v. Sanders,
169 S.W.3d 724, 726 (Tex. App.—Waco 2005, no pet.).  Chapter 21 of the Labor
Code waives immunity as to entities it defines as “employers,” including in
relevant part, “a
county, municipality, state agency, or state instrumentality...”  Tex. Lab. Code Ann. § 21.002(8)(D) (Vernon 2006); see
Sauls v. Montgomery County, 18 S.W.3d 310, 315 (Tex. App.—Beaumont 2000, no
pet.); see also
Dallas/Fort
Worth Int’l Airport Bd. v. Funderburk, 188 S.W.3d 233, 235 (Tex. App.—Fort Worth 2006, pet.
granted, judgm’t vacated w.r.m.); Purdin v. Copperas Cove Econ. Dev. Corp.,
143 S.W.3d 290, 293 n.2 (Tex. App.—Waco 2004, pet dism’d).[2] 
Citing Cornish v. Texas Department of Criminal Justice, the TDCJ disputes
whether it is Guard’s employer.  Cornish utilized a two-part test to
determine the TDCJ’s status as an employer: (1) “the defendant must fall within the statutory
definition [of an employer];” and (2) “there must be an employment relationship
between the plaintiff and the defendant.”  No.
3:04-cv-0579-R, 2006
 U.S. Dist. Lexis 8231, at *18 (N.D. Tex. March 2, 2006) (mem.) (quoting Deal v.
State Farm County Mut. Ins. Co., 5 F.3d 117, 118 n.2 (5th Cir. 1993)).

The TDCJ’s argument confuses
immunity from suit and immunity from liability.  “Immunity from suit prohibits
suits against the State unless the State expressly consents to the suit.”  Taylor, 106 S.W.3d at 696.  “Immunity from liability protects the State from judgments even after the State
has consented to suit.”  Id.  “Unlike immunity from suit, immunity from liability
does not affect a court’s jurisdiction to hear a case and cannot be raised in a
plea to the jurisdiction.” 
Id.

At least one court has applied
the two-part test in the context of a plea to the jurisdiction.  See De
Santiago v. W. Tex. Cmty. Supervision & Corr. Dep’t, 203 S.W.3d 387,
396-99 (Tex. App—El Paso 2006, no pet.).  However, we do not agree that the
second prong of this test applies to the issue of immunity from suit.  When
addressing immunity from suit, we have found a waiver of immunity solely based
on whether a governmental entity meets the Labor Code’s definition of an “employer.” 
See Purdin, 143 S.W.3d at 303; see also Tex. Dep’t of Crim. Justice v.
King, No. 10-01-058-CV, 2003 Tex. App. Lexis 10481, at
*12 (Tex. App.—Waco Dec. 10, 2003, pet. denied) (mem. op.).  In King,
we specifically noted that “there is no question that the TCHRA waives TDCJ’s immunity from
suit.”  2003
Tex. App. Lexis 10481, at *12 (emphasis added).  In Funderburk, the Fort Worth Court affirmed the denial of a plea to the jurisdiction because an entity fell “within the
TCHRA’s definition of ‘employer’” and “because the TCHRA waives sovereign immunity from suit
as to the entities defined by the Act as employers.”  188 S.W.3d at 234, 238
(emphasis added); see Tarrant County Hosp. Dist. v. Henry, 52
S.W.3d 434, 448 (Tex. App.—Fort Worth 2001, no pet.).  Other courts have
applied the two-part test when “determining
whether a defendant is an ‘employer’ subject to liability.”  Cornish, 2006 U.S. Dist. Lexis 8231, at
*18 (emphasis
added); Ancira
Enters. v. Fischer,
178 S.W.3d 82, 88 (Tex. App.—Austin 2005, no pet.).

Accordingly, we do not find
that an employment relationship is necessary to determining immunity from
suit.  Whether the
TDCJ is Guard’s employer addresses immunity from liability, an issue
that we are prohibited from considering when reviewing a plea to the
jurisdiction.  See Taylor, 106 S.W.3d at 696.  We, therefore, hold that the
TDCJ qualifies as an employer as defined by the Labor Code.  See King, 2003 Tex. App. Lexis 10481,
at *12.  The court did not erroneously deny the TDCJ’s plea to the jurisdiction
on this basis.  See Sauls, 18 S.W.3d at 315; see also Funderburk, 188 S.W.3d at 235-36; Purdin,
143 S.W.3d at 293 n.2;
Tex. Lab. Code Ann. § 21.002(8)(D).




STATUTORY PREREQUISITES

          The Labor Code
establishes two timelines with which an aggrieved employee must comply.  First,
an employee must file an
administrative complaint within 180 days of any alleged discriminatory acts.  See
Rice v.
Russell-Stanley, L.P.,
131 S.W.3d 510, 513 (Tex. App.—Waco 2004, pet. denied); see also Schroeder
v. Texas Iron Works, Inc., 813 S.W.2d 483, 485-86 (Tex. 1991); Tex. Lab. Code Ann. § 21.202(a)
(Vernon 2006).[3]  This requirement is “mandatory and jurisdictional;” thus, “failing
to comply deprives the court of subject matter jurisdiction.”  Schroeder,
813 S.W.2d at 486; Czerwinski
v. Univ. of Tex. Health Sci. Ctr., 116 S.W.3d 119, 121 (Tex. App.—Houston [14th Dist.] 2002,
pet. denied); see Vela, 69 S.W.3d at 700.  Second, the employee
must file suit within 60 days of receiving a right-to-sue letter from the
administrative agency.  See Vela, 69 S.W.3d at 699; see also Tex.
Lab. Code Ann. §
21.254 (Vernon 2006).  The Texas Supreme Court has not
addressed whether this 60-day period is jurisdictional.

According to the Government
Code, “statutory prerequisites,” such as notice, “are jurisdictional requirements
in all suits against a governmental entity.”  Tex.
Gov. Code. Ann. § 311.034 (Vernon Supp. 2006).  However, a filing period is not
an act that must be performed prior to filing suit and so is not a
statutory prerequisite.  We have held that a “filing period is a limitations period, not a
jurisdictional requirement.”  Tex. Dep’t of Transp. v. Beckner, 74 S.W.3d 98,
103 (Tex. App—Waco 2002, no pet.).  Accordingly, Chapter 21’s 60-day filing
period is not jurisdictional.  See id.; see also Middleton v. Gould, 952
F. Supp. 435, 438 (S.D. Tex. 1996); Comer v. Gates of Cedar Hill, No. 3-00-CV-2499-N, 2002 U.S. Dist. Lexis 16944,
at *6-7 (N.D. Tex. Sept. 9, 2002).

The TDCJ argues that Guard failed to comply with
either of these timelines, both of which it pleaded as affirmative defenses and
as grounds for its plea to the jurisdiction and alternative summary judgment.  Because the 60-day period is
not jurisdictional, it cannot serve as the proper basis for a plea to the
jurisdiction, and we cannot address it on interlocutory appeal.  See Cozby
v. City of Waco, 110 S.W.3d 32, 35 (Tex. App.—Waco 2002, no pet.).  

180-Day Period for Filing Administrative Complaints

          The TDCJ contends that Guard failed to exhaust administrative
remedies by untimely filing an administrative complaint.

Because Guard’s complaint is dated August 24,
2001, any discriminatory acts must have occurred within the preceding 180 days,
approximately February 25.  Guard complains of acts occurring between April
2000 and July 2001.  In April 2000, employee Larry Bitter commented that Guard
was an “old man,” an “old fart, and “bellyaching.”  Supervisor Patrick
O’Shaughnessy may have made similar comments.  During staff meetings, then
inspector general John McAuliffe verbalized his desire to promote younger
individuals and obtain “fresh blood.”  Also during staff meetings, employee
Edward McElyea heard McAuliffe state that management was old and young people
need to take over.  John Moriarty, then a deputy director, informed McElyea of
the need to get rid of “old people.”  In December 2000, McElyea heard Moriarty
state that he did not want “old investigators” assisting with apprehension of
escapees.  In May 2000, Guard was reassigned.  In August 2000, O’Shaughnessy
sent an inner-office letter to McAuliffe, which contained representations about
Guard’s abilities and spawned an investigation of Guard.  In September 2000,
Guard was removed from project director of the FUGINET program.  In May 2001,
O’Shaughnessy told McElyea that, “we can’t wait for people to retire around
here.”  On June 13, 2001, after filing a complaint with the TDCJ, Guard was
notified of a permanent transfer.[4]

Although several of these acts fall outside the
180-day period, Guard
argues that the timeliness of a
complaint can be inferred from the TCHR’s issuance of a right-to-sue-letter.  See Gorges
Foodservice, Inc. v. Huerta, 964 S.W.2d 656, 664 (Tex.
App.—Corpus Christi 1997, pet. withdrawn); see
also
Tex. Parks & Wildlife Dep’t v. Dearing, 150 S.W.3d 452, 459 (Tex. App.—Austin 2004, pet.
denied).  The TDCJ disagrees
because:    

Gorges held only that, in the absence of any
evidence to the contrary, a jury could infer from the plaintiff’s receipt
of the Commission’s right-to-sue-letter that his complaint was timely; it did
not hold that issuance of a right-to-sue-letter creates a “presumption” of
timeliness. Additionally, at least one Texas appellate court that addressed
this precise point held that issuance of a
right-to-sue-letter from the Commission cannot confer subject matter
jurisdiction over a plaintiff’s complaint when the plaintiff has failed to file
his charge with the Commission within 180 days after the alleged adverse
employment action, as required by section
21.202.

 

Manuel v. Sanderson Farms, Inc., 90 Fed. Appx. 714, 717 (5th
Cir. 2004) (not designated for publication) (emphasis added) (discussing Gorges
Foodservice); see
Guevara
v. H.E. Butt Grocery Co., 82 S.W.3d 550, 553 (Tex. App.—San Antonio 2002, pet. denied)
(rejecting the argument that a “‘right to sue’ letter confers
subject-matter jurisdiction”).  We agree that a right-to-sue-letter neither creates a
presumption of timeliness nor confers subject matter jurisdiction.  See Manuel,
90 Fed. Appx. at 717; see also Guevara, 82 S.W.3d at 553. 
Rather, the letter constitutes notice of exhaustion.  See Vela,
69 S.W.3d at 700 (citing City of Houston v. Fletcher, 63 S.W.3d 920, 923
(Tex. App.—Houston [14th Dist.] 2002, pet. denied)).

Guard further argues that all
of the alleged discriminatory acts are timely as part of a continuing
violation.  The continuing violation doctrine “expands the scope of those
discriminatory events that are actionable, as long as one of the events occurs
within the 180-day period.”  Wal-Mart Stores v. Davis, 979 S.W.2d 30, 41 (Tex.
App.—Austin 1998, pet. denied) (citing Glass
v. Petro-Tex Chem. Corp., 757 F.2d 1554, 1560-61 (5th Cir. 1985)).  Under this
doctrine, “an unlawful employment practice manifests itself over time,
rather than as a series of discrete acts.”  Id. at 41-42 (citing Webb v.
Cardiothoracic Surgery Assocs. of N. Texas, P.A., 139 F.3d 532, 537 (5th Cir.
1998)).  The 180-day period begins when “acts supportive of a civil
rights action are, or should be, apparent to a reasonably prudent person in the
same or a similar position.”  Id. at 42.  The “focus is on what event
should, in fairness and logic, have alerted the average layperson to act to
protect his or her rights.”  Id.

However, “discrete discriminatory acts are not
actionable if time barred, even when they are related to acts alleged in timely
filed charges.”  AMTRAK
v. Morgan, 536
 U.S. 101, 113, 122 S. Ct. 2061, 2072, 153 L. Ed. 2d 106 (2002) (emphasis added).[5]  Following Morgan, Texas courts apply the
doctrine as long as there is “an organized scheme leading to and including a present violation,
so that it is the cumulative effect of the discriminatory practice, rather
than any discrete occurrence, that gives rise to the cause of action.”  Cooper-Day v. RME Petroleum Co., 121 S.W.3d 78, 87 (Tex. App.—Fort
Worth 2003, no pet.) (emphasis
added); see Ibezim
v. Tex. Dep’t of Health, No.
03-03-00308-CV, 2004
Tex. App. Lexis 6252, at *22-23 (Tex. App.—Austin July 15, 2004, no pet.)
(mem. op.); see also Vida v. Univ. of Tex. Houston Health Sci. Ctr., No. 14-01-01162-CV, 2002 Tex. App. Lexis 8432, at
*2-3 (Tex. App.—Houston [14th Dist.] Nov. 27, 2002, no pet.) (not
designated for publication).  Therefore, under Texas law, the continuing violation
doctrine applies irrespective of hostile work environment claims.

As the TDCJ concedes, Guard’s June 2001 transfer
occurred within the 180-day period.  It also appears that O’Shaughnessy made comments in
May 2001.  Of the remaining alleged acts, those involving dismissals, demotions, investigations,
transfers, disciplinary actions, and reassignments constitute discrete acts to
which the continuing violation doctrine does not apply.  See Pegram v. Honeywell, Inc., 361 F.3d 272, 280 (5th Cir.
2004); see also Bowers v. Edgewood Indep. Sch. Dist., Civil Action No:
SA-05-CA-404-XR, 2005
 U.S. Dist. Lexis 32037, at *16 (W.D. Tex. Oct. 4, 2005); Morgan, 536 U.S. at 114, 122 S. Ct. at 2073.  Furthermore, Guard can only
recover “for retaliation to the extent that it occurred within the
limitations period.”  Hamic v. Harris County W.C. & I.D. No., 36, 184 Fed. Appx. 442, 447
(5th Cir. 2006) (not designated for publication) (citing Pegram, 361 F.3d at 279-80).

All that remains are acts composed of allegedly “ageist” comments,
which are
not “isolated
employment decisions, or discrete acts.”  Cooper-Day, 121 S.W.3d at 87.  We must examine those
comments occurring outside the 180-day period to determine whether they are
part of a continuing violation.  In doing so, we consider three factors:

The first is subject matter. Do the alleged acts
involve the same type of discrimination, tending to connect them in a
continuing violation? The second is frequency. Are the alleged acts recurring
(e.g., a biweekly paycheck) or more in the nature of an isolated work
assignment or employment decision? The third factor, perhaps of most
importance, is degree of permanence. Does the act have the degree of permanence
which should trigger an employee’s awareness of and duty to assert his or her
rights, or which should indicate to the employee that the continued existence
of the adverse consequences of the act is to be expected without being
dependent on a continuing intent to discriminate?

 

Berry
v. Bd. of Supervisors of L.S.U., 715 F.2d 971, 981 (5th Cir. 1983).[6]

An analysis of these factors leads us to the
conclusion that there is at least a fact issue as to whether the alleged acts,
composed of “ageist” comments and the June 2001 transfer, are part of a
continuing violation.  First, these acts involve the same type of subject
matter.  See id.; see also Cooper-Day, 121 S.W.3d at
87.  The TDCJ argues
that these remarks are not “in and of themselves ageist.”  We disagree.  Each
of these acts denotes age discrimination.  It may also be implied that this discrimination
contributed to the decision to permanently transfer Guard.

Relying on Morgan, the
TDCJ contends that discrete acts, such as the transfer, cannot be combined with
non-discrete acts, such as the remarks, to form a continuing violation. 
However, all that is required is that the acts be of the same type of
discrimination.

Given [the] various restrictions on use of the continuing violation
doctrine, the burden is upon [Plaintiff] to offer evidence that [he] suffered
race-based harassment both prior to and during the filing period, that the
incidents of harassment were related, and that the harassment was pursuant to
an organized scheme.

 

Celestine
v. Petroleos de Venezuella SA, 266 F.3d 343, 353 (5th Cir. 2001); see
Lowery v.
Carrier Corp.,
953 F. Supp. 151, 157 (E.D. Tex. 1997).[7] 
The record contains evidence that Guard suffered age discrimination both
outside and inside the 180-day period. 

Second, these acts occurred
with frequency.  See Berry, 715 F.2d at 981; see also
Cooper-Day, 121 S.W.3d at
87.  Guard
contends that these “discriminating comments” were “recurring rather than
isolated.”  The record indicates that various remarks were made in April 2000,
December 2000, and May 2001, but is unclear as to when any other comments were
made and whether such remarks were recurring.  In light of the fact that Guard cites
April 2000 to July 2001 as the relevant time frame in which discriminatory acts
occurred, and construing the pleadings in Guard’s favor, the court could
reasonably conclude that these remarks occurred continuously during this
period.  At a minimum, a fact issue exists as to this factor.

Citing Morgan, the TDCJ
contends that the comments were not made by the “same managers” and Moriarty’s
comments were not related to Guard.  We do not agree that Morgan stands
for this proposition:

With respect to Morgan’s hostile environment
claim, the Court of Appeals concluded that “the pre- and post-limitations
period incidents involved the same type of employment actions, occurred
relatively frequently, and were perpetrated by the same managers.” To support
his claims of a hostile environment, Morgan presented evidence from a number of
other employees that managers made racial jokes, performed racially derogatory
acts, made negative comments regarding the capacity of blacks to be
supervisors, and used various racial epithets. 

 

Morgan, 536 U.S. at 120, 122
 S. Ct. at
2076 (internal citations omitted).  In analyzing the specific facts of the
case, Morgan does not appear to mandate that comments be made by the
same people or related to the plaintiff in order to be actionable.  Rather, the
“fact that not all the incidents of harassment involved the same people does
not show a lack of recurrence or frequency.”  Waltman v. Int’l Paper Co., 875 F.2d 468, 475 (5th Cir.
1989).  Acts may form a continuing violation if “connected by common threads.”  Hadad v. Am. Airlines, No. 3:00-CV-0041-D, 2003 U.S. Dist. Lexis 1872 at
*9 (N.D. Tex. Feb. 7, 2003) (mem.).

            Third, these acts do not have the “degree of permanence” that would
make Guard aware of the need to assert his rights.  The mere fact that Guard
may have been aware that he was being discriminated against does not imply that
he should have known to assert his rights.  See Lowery,
953 F. Supp. at 158.  Guard “could
have believed [the] situation would improve, that it was not of a permanent
nature, and that [he] could avoid having to sue [his] employer.”  Id.  Guard’s transfer is the only act that establishes any permanence and is within
the 180-day period.

In summary, Guard cannot
recover for discrete incidents that occurred outside the 180-day period.  See Morgan, 536 U.S. at 110, 122 S. Ct. at 2070-71.  Because
a fact issue exists as to the remaining acts, the court did not erroneously deny the TDCJ’s
plea to the jurisdiction based on the timeliness of Guard’s complaint.  See
Miranda, 133 S.W.3d at 227-28.

FAILURE TO STATE A CLAIM

          The TDCJ argues that
it is immune from suit because Guard has failed to show a prima facie case of
discrimination or retaliation and so cannot establish a claim under the Labor
Code.    

However,
in a plea to the jurisdiction, we consider evidence only “when necessary to resolve the jurisdictional issues
raised.”  Bland
Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 555 (Tex. 2000).  Guard’s pleadings allege age discrimination and
retaliation in violation of the Labor Code §§ 21.051, 21.055.  See Tex.
Lab. Code Ann. §§ 21.051, 21.055 (Vernon 2006). 
To waive sovereign immunity and confer subject matter jurisdiction under
Chapter 21, an administrative complaint must be timely filed and an entity must
qualify as an employer.  See Sauls, 18 S.W.3d at 315; see also Funderburk, 188 S.W.3d at 234; Purdin,
143 S.W.3d at 293 n.2; Pegram, 361 F.3d at 281.  We have already determined that
both these requirements have been met.  Thus, sovereign immunity has been
waived and the trial court maintains subject matter jurisdiction.  This case
does not present a situation where we must explore the merits of Guard’s
claims.[8]  See
State v. Lueck, 212 S.W.3d 630, 637-38 (Tex. App.—Austin 2006, pet. filed).

Accordingly, no further jurisdictional
issues remain for our determination.  We overrule the TDCJ’s first and second issues.  The
trial court’s judgment is affirmed.

        

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

(Chief
Justice Gray dissents with a note)*

Affirmed

Opinion delivered and filed
April 11, 2007

[CV06]

 

*(Note
by Chief Justice Gray: “I am confident that the many errors necessary to arrive
at this result will be adequately identified by the Attorney General’s office
and, if not subsequently corrected by the Texas Supreme Court, will also be
identified by other courts presented with these issues, and the errors in the
Court’s opinion avoided.  Accordingly I find it unnecessary to set out all the
reasons, for there are several, that I cannot join the Court’s opinion or
judgment.  Accordingly, I dissent.”)









[1]           The TDCJ points to no place in the
record where Guard has alleged a hostile work environment claim.  Guard’s Brief
fails to address this argument.  Because the record does not indicate that
Guard pleaded a hostile work environment claim, we do not address this issue.  See
Tex. R. App. P. 47.1.





[2]               Chapter 21 is patterned after Title VII of the Civil
Rights Act; therefore, we may look to federal law for guidance when
interpreting Chapter 21.  See Tex. Lab. Code Ann. § 21.001 (Vernon 2006); see also Quantum
Chem. Corp. v. Toennies, 47 S.W.3d 473, 476 (Tex. 2001).

 





[3]               Chapter 21 was entitled the Texas Commission on Human Rights Act until the
abolishment of the Commission on Human Rights.  See Little v. Tex. Dep’t of Crim. Justice, 148 S.W.3d 374, 377-78 (Tex. 2004).  In 2004, the “powers and duties” of the Commission on
Human Rights were transferred to the Texas Workforce Commission Civil Rights Division. 
Tex. Lab. Code Ann. § 21.0015
(Vernon 2006).  Because Guard’s charge was filed with the TCHR prior to 2004,
we will refer to the TCHR rather than the TWC.      





[4]           Suit may be based on claims contained
in the complaint, “any kind of discrimination like or related to the charge’s
allegations,” and allegations “that could reasonably be expected to grow out of
the initial charges of discrimination.”  Fine v.
GAF Chem. Corp.,
995 F.2d 576, 578 (5th Cir. 1993) (quoting Fellows
v. Universal Rest., Inc., 701 F.2d 447, 451 (5th Cir. 1983)).





[5]           Morgan contrasted hostile work
environment claims because they involve acts occurring “over a series of days
or perhaps years and, in direct contrast to discrete acts, a single act of
harassment may not be actionable on its own.”  AMTRAK v. Morgan, 536 U.S. 101, 115, 122 S. Ct. 2061, 2073, 153 L.
Ed. 2d 106 (2002).





[6]           This list is not exhaustive.  See Berry v. Bd. of Supervisors of L.S.U., 715 F.2d 971, 981 (5th Cir. 1983).

 





[7]
              Although Lowery
addresses hostile work environment claims, we find it instructive because Texas courts use the three Berry factors in cases where hostile work environment
claims have not been pled.  See Cooper-Day
v. RME Petroleum Co., 121 S.W.3d 78, 87 (Tex. App.—Fort Worth 2003, no pet.); see
also Haliburton v. City of San Antonio, 974 S.W.2d 779, 782 (Tex.
App.—San Antonio 1998, no pet.); Lowery v. Carrier Corp., 953 F. Supp.
151, 157 (E.D. Tex. 1997).





[8]           In Miranda, the Supreme Court
examined the merits of the Mirandas’ claims because they had alleged a violation
of the Texas Tort Claims Act, under which immunity from suit and immunity from
liability are “co-extensive.”  Tex. Dep’t of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 224 (Tex. 2004).  “This
provision effectively creates a situation in which evaluating whether subject
matter jurisdiction exists in a given case may require a court to examine the
merits of a plaintiff's claims.”  Prairie
View A&M Univ. v. Brooks,
180 S.W.3d 694, 703 (Tex. App.—Houston [14th Dist.] 2005, no pet.).