The STATE of Texas, Appellant,

v.

J. Grady BROWN, Jr., Appellee.

No. 2-04-035-CV.

Court of Appeals of Texas,
Fort Worth.

Jan. 27, 2005.

Rehearing En Banc Overruled
Feb. 10, 2005.

Rehearing Overruled March 10, 2005.

See also 984 S.W.2d 348.

Greg Abbott, Atty. Gen., Barry R. McBee, Edward D. Burbach, Grady Click, Sherry L. Peel, Asst. Atty's Gen., Austin, for appellant.

Richard H. Kelsey, John E. Kelsey, Lawrence C. Collister, Scott W. Hickey, Kelsey, Kelsey & Collister, Denton, for appellee.

Panel A: LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

## OPINION

LEE ANN DAUPHINOT, Justice.

This case arises out of a condemnation proceeding filed December 23, 1993 in which the State acquired a portion of land owned by Appellee J. Grady Brown. The State appeals, arguing that the trial court abused its discretion by awarding attorney's fees and expenses to Brown. Because we hold that the trial court did not abuse its discretion by awarding attorney's fees and expenses under section 21.0195 of the Texas Property Code,[1] we affirm the trial court's judgment.

### BRIEF FACTS

In December 1993, the State filed a petition for condemnation seeking to condemn portions of two adjacent tracts of

---

1. TEX. PROP.CODE ANN. § 21.0195 (Vernon 2004).

land owned by Brown. The State sought to condemn this property located at the intersection of Interstate Highway 35E and State Highway 121 to complete Texas Department of Transportation's (TxDOT) plan for expansion of these highways. Pursuant to the Texas Property Code, the trial court appointed three disinterested special commissioners to assess the damages suffered by Brown as owner of the properties to be taken.[2] The special commissioners determined that Brown's damages from the State's taking and injury to the remainder of property were $3,426,877.00. Both Brown and the State appealed the findings by objecting and demanding a jury trial.

Approximately ten days before trial, over Brown's objection in the nature of a plea to the jurisdiction, the trial court granted the State leave to file its third amended petition. A jury trial was then held, and the jury awarded Brown $767,673.55. Brown appealed, complaining that the trial court abused its discretion by allowing the State to file a third amended petition of condemnation that sought to take more property than was set forth in the petition that was before the special commission.[3] In that appeal, we held that the trial court lacked jurisdiction over the State's third amended petition that expanded the nature of the taking from that considered by the special commissioners.[4] We reversed and remanded the case for a new trial on the petition that was considered by the special commissioners.[5]

Upon remand and pursuant to the trial court's suggestion, the State filed a fourth amended petition that was identical to the petition considered by the special commissioners (with the exception of the legal description that had been previously amended to cure a typographical error). Thereafter, Brown filed a landowner's motion to assess fees and costs, and the trial court entered an interlocutory order finding the State liable for payment of Brown's fees and expenses under Texas Property Code sections 21.019 and 21.0195. Following the new trial and a final hearing on the interlocutory order, the trial court affirmed its interlocutory order in a final judgment.

Reflecting the jury verdict and the landowner's fees and expenses, the final judgment awards (1) the State fee title to the property being condemned; (2) Brown's damages ($586,040.00); and (3) judgment for Brown against the State for the amount of $413,040.52 for reasonable and necessary fees for attorneys, appraisers, photographers, and other expenses. The State now appeals.

## ATTORNEY'S FEES

■ In its sole issue, the State argues that the trial court abused its discretion by awarding Brown section 21.019 and 21.0195 reasonable and necessary attorney's fees and litigation expenses in this condemnation proceeding because the case was not dismissed and no judgment was entered denying the right to condemn the property. We disagree.

Section 21.0195 states in relevant part:

(a) This section applies only to the dismissal of a condemnation proceeding that involves the Texas Department of Transportation.

. . . .

(c) If a court dismisses a condemnation proceeding on the motion of the

---

2. *See id.* § 21.014.

3. *Brown v. State,* 984 S.W.2d 348, 349 (Tex. App.-Fort Worth 1999, pet. denied).

4. *Id.* at 349–50.

5. *Id.* at 350–51.

department or as a result of the failure of the department to bring the proceeding properly, the court shall make an allowance to the property owner for the value of the department's use of the property while in possession of the property, any damage that the condemnation has caused to the property owner, and any expenses the property owner has incurred in connection with the condemnation, including reasonable and necessary fees for attorneys.[6]

At trial, the trial court set forth in its ruling on the record a detailed analysis and explanation of the applicability of the Property Code's attorney's fees and expenses award provisions in this case. The trial court's interlocutory ruling, adopted in the final ruling, and final ruling state in part:

I believe—well, first, I—there is—whether anyone likes, I think that analysis by the Court or not—probably neither party likes this analysis by the Court—21.0195 does contain either a vagueness or an ambiguity on its face. Subparagraph A and subparagraph C, while I won't say they're in conflict, they create an ambiguity that requires the Court to construe that ambiguity. Subparagraph A says it applies only to the dismissal-and I agree with [Brown]. This is one of those matters where people need to be more careful about what they write that becomes a statute. If what they meant to say was, these only apply to TxDOT cases, that isn't what they said.

What they said was this only applies to the dismissal of a condemnation proceeding involving TxDOT, which doesn't comport exactly with the language of subparagraph C which says if a court dismisses a condemnation proceeding on the motion of the department or as a result of the failure of the department to bring the proceeding properly the—I won't say it's a conflict, but the vagueness there is that a court can do things other than dismiss an entire proceeding that addresses the failure of a condemnor to bring an action properly.

[Brown]'s argument is, he wants to say the court should address it from the effect on the landowner, I should look through that end of the scope, and the State would say, no, you should look at it through the acts of the State and [through that end] of the scope. Did the State dismiss the action as controlling, or did the landowner file a motion to dismiss which got granted because now that's bilateral? But the State wants me to look at it from the end of the scope that analyzes the event through what did the State do.

The landowner wants me to turn it around and look at the—and analyze the statute under what is the impact or effect on the landowner regardless of the procedural description of what got done. If it is tantamount to causing the landowner to have to do everything over again because of acts attributable to the State, the landowner says the Court should construe that as triggering the effect of 21.0195.

Because of the language in Subparagraph C of 21.0195 I believe the landowner's correct about that, that the proper code construction of 21.0195, because of the existence of Paragraph C, is that the Court should analyze the applicability of 21.0195 on what the effect was on the landowner rather than the procedural posture of what actually was taken by the State, result being that at least the third amended petition was found to have been erroneously proceeded on.

6. Tex. Prop.Code Ann. § 21.0195.

And that's bad grammar, but *it was found to have been improperly brought by the State.*

The action by the State bringing the third amended petition resulted—resulted in a judgment which was reversed not because there was an appraisal valuation methodology, not for a failure of the greater weight and preponderance of the evidence, not because of an admission of evidence error, not because of a failure of proof or a variation between pleadings and proof or any of those kinds of things, but because the Court found that by the State's volitional action it took additional land, thus depriving the Court of subject matter jurisdiction because it's a derivative jurisdiction case and tried a different case than the case it took before the special commissioners.

Now, as a practical matter, the effect on the landowner is exactly the same as if there had been a finding at the trial court level of an additional take resulting in a dismissal, either on motion of the State or on motion of the landowner.

Accordingly, while I understand [the State]'s arguments, the legislative history arguments and points about that, I believe that the existence of 21.0195C, commencing with the word "or" in the second line, "or as a result of," triggers the applicability of this statute and entitles these landowners in the Brown case to their remedies that they seek subject to proof.

Now, the Court could look at the legislative history to try and aid me in determining whether my analysis and my applicability of the Code Construction Act and my determination under 21.0195C as to the import, the validity, the purpose, the reason, the correct construction of 21.0195C is being applied by the Court, and that would be—then I would look at the legislative history, of which there is none about Subparagraph C. So I am not aided or assisted, and I have only the case law, the G[ra]cia case, the statute itself, and the facts of this case and the code construction act to guide me in making these determinations.

Because I think and take the position and therefore rule that the matters result—that placed this case in the posture it's in right now result from a volitional act by the State in the filing of, insistence upon and obtaining the ruling to go to trial on the third amended petition, thus injecting the jurisdictional defect into the case resulting in the adverse ruling to the State by the Court of Appeals that the landowner is now privileged to establish its fees and costs. . . . And I'll better frame and better articulate that in the form of any findings and conclusions that anybody wants, but those are going to be my rulings in connection with the applicability of the statute, the application of the statute to the facts, the interpretation of 21.0195, the applicability of the G[ra]cia case to the facts of this case.

We'll call that the liability finding; that is, that the State is in fact liable for damages under 21.0195. . . .

. . . .

In addition, the Court still believes that the statutory scheme enacted by the legislature, although the Court has been put to some inferences and some interpretations and had to consider the meaning or applicability, in light of some language that isn't particularly helpful, of 21.019 and 21.0195, the Court believes that the attorney fee recovery statute applies to this case, either 21.019, 21.0195, or both. It's not necessary for the Court to determine that, because here I am going to find, so that the

record is complete, that the events in this case, the history of this case, the procedural and substantive history of this case is effectively the same, as if the proceeding were dismissed for defects in its original presentation by the condemnor such that it triggers the policy behind the statute. And the policy behind the statute—in construing any code, I'm supposed to construe it in a way as not to reach an anomalous result. I'm supposed to construe it in a way that effectuates, to the extent I can know what it is, the legislative intent and purpose of the statute.

Here, the legislative intent and purpose of the statute, as the entire eminent domain statutory scheme and constitutional authority is based, operates or is designed to operate to favor the landowner on any close call. It's designed to operate in such a manner that the State is held to a strict standard, is designed to prevent and prohibit the abuse of property owners through the filing-or the erroneous filing of condemnations or the filing of condemnation cases which are filed incorrectly and do not result in finality of judgment or do not result in the most efficient use of the condemnation authority and the most minimal invasion of the private property rights of the landowner.

Because I believe that to be the policy of the law, I'm going to construe the statute in that regard, and that's the basis of my finding that the statute applies to this case. For the-anticipating it would be a State's request, though,

I'm also going to find that there was no motion to dismiss by that name, either by the landowner or the condemnor in this case, nor was there an order of dismissal in this case.

In addition, I'm going to find that the—that, frankly, a motion to dismiss— I guess I'm—just can't resist adding it, that a motion to dismiss is a federal practice and probably wouldn't have been applicable anyway-but to construe it in the light of this statute so that the Court of Appeals knows at least the basis on which the trial judge believes this case was postured, the pleadings by the condemnee did constitute a plea to the jurisdiction. They did raise the issue of lack of jurisdiction derivative into the trial court from the special commissioners because of the pleading amendment.

They did substantively raise the point that would have been raised, and the effective result was the reversal and remand of the case, which has the effect of accomplishing—or creating the same policy situation that the legislation, I believe, was designed to minimize, and that was the necessity to try two times a very, very expensive case because of an error in the bringing of the case by the condemnor. (emphasis added).

■ We agree with and adopt the trial court's analysis and reasoning in this case.[7] The effect of this court's decision in the first *Brown* case was to dismiss the State's third amended petition because of the State's "failure . . . to bring the proceeding properly."[8] Consequently, after review of

7. See *State v. PR Invs.*, 132 S.W.3d 55, 67 (Tex.App.-Houston [14th Dist.] 2004, pet. filed) (affirming award of attorney's fees and expenses after dismissal on condemnee's motion because the State filed an amended petition including plan not reviewed by the special commission); *State v. Gracia*, 56 S.W.3d 196, 199, 202 (Tex.App.-Fort Worth 2001, no pet.) (affirming award of attorney's fees and expenses upon dismissal entered after State filed motion for dismissal and condemnee filed plea to the jurisdiction).

8. See *Brown*, 984 S.W.2d at 349–50; TEX. PROP.CODE ANN. § 21.0195(c).

the record under the appropriate standard of review,[9] taking into account the principles of statutory construction,[10] and recognizing that eminent domain statutes should be construed in favor of the landowner,[11] we hold that the trial court did not abuse its discretion by awarding attorney's fees and litigation expenses pursuant to section 21.0195. Because the award was correct under section 21.0195, we do not reach the sub-issue of whether it was also correct under section 21.019. We overrule the State's issue.

### CONCLUSION

Having held that the trial court did not abuse its discretion by awarding attorney's fees and expenses, we affirm the trial court's judgment.

---

9. *See Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986); *State v. Southwestern Bell Tel. Co.,* 526 S.W.2d 526, 528 (Tex.1975); *In re Talco–Bogata Consol. Indep. Sch. Dist. Bond Election,* 994 S.W.2d 343, 347 (Tex. App.-Texarkana 1999, no pet.).

10. *Purdin v. Copperas Cove Econ. Dev. Corp.,* 143 S.W.3d 290, 294 (Tex.App.-Waco 2004, pet. dism'd).

11. *Gracia,* 56 S.W.3d at 199.